Christin Cho (Cal Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HEDRICK, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> BSH HOME APPLIANCES CORPORATION, <br><br> *Defendant.* | Case No. 8:23-cv-00358 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

# Table of Contents

I.  Introduction.................................................................................................. 1

II.  Parties. ...................................................................................................... 1

III.  Jurisdiction and Venue............................................................................. 2

IV.  Facts. ....................................................................................................... 2

  A.  Gas stoves produce health-harming pollutants................................ 3

  B.  Defendant knows of this pollutant risk............................................ 5

  C.  Safe alternative designs that would reduce the danger are available. ............ 7

  D.  Defendant should have warned of the pollutant risk........................ 7

  E.  Defendant overcharges millions of consumers................................. 8

  F.  Plaintiff was misled and harmed by Defendant. .............................. 9

  G.  No adequate remedy at law. .......................................................... 10

V.  Class Action Allegations. ......................................................................... 11

VI.  Claims. .................................................................................................... 13

  Count I: Violation of California's Unfair Competition Law................... 13

  Count II: Violation of California's False Advertising Law (FAL) .......... 15

  Count III: Violation of California's Consumer Legal Remedies Act (CLRA) ....... 16

  Count IV: Breach of Implied Warranty ................................................ 18

  Pursuant to Song-Beverly Consumer Warranty Act ............................. 18

  Count V: Violations of State Consumer Protection Statutes ................. 20

  Count VI: Breach of Implied Warranties............................................. 21

  Count VII: Fraudulent Omission........................................................ 23

  Count VIII: Unjust Enrichment / Quasi-contract................................ 24

VII.  Jury Demand. ......................................................................................... 25

VIII.  Prayer for Relief. ................................................................................... 25

i

**I.**     **Introduction.**

1.     About 40% of American households use natural gas stoves. Many households use the stove daily to cook in the home.  Recent studies confirm however, that gas cooking has important risks.  Gas stoves "emit air pollutants… at levels the EPA and World Health Organization have said are unsafe and linked to respiratory illness, cardiovascular problems, cancer, and other health conditions."[1]  For example, gas stoves emit nitrogen oxides, which are "gases [that] can worsen asthma and other lung diseases."[2] This is true for all consumers, adults and children alike, but is especially risky for children. *Id.*  Children living in households with gas stoves are "42% more likely to have asthma."[3]

2.     This risk is avoidable; manufacturers can reasonably design gas stoves to mitigate the risk of pollutants.  Manufacturers also can—and should—disclose the risk of pollutants to consumers, who can then make an informed choice about whether to buy a gas stove or an electric stove (which does not carry the same risk).

3.     Defendant BSH Home Appliances Corporation makes, sells, and markets household appliances, including Thermador brand gas stoves. Plaintiff purchased a gas stove made by Defendant.  Plaintiff believed that the product was free from defects, and he did not know that gas cooking has significant pollutant risks. Had he known of the risks of pollutants from the gas stove, he would not have purchased it.

4.     Plaintiff brings this case for himself and for other consumers who purchased Defendant's gas stoves, ovens, and range products.

**II.**     **Parties.**

5.     Plaintiff Robert Hedrick is domiciled in Palm Springs, California.

---

[1] https://www.bloomberg.com/news/articles/2023-01-09/us-safety-agency-to-consider-ban-on-gas-stoves-amid-health-fears
[2] https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-health-risk-a6971504915/
[3] https://www.health.harvard.edu/blog/have-a-gas-stove-how-to-reduce-pollution-that-may-harm-health-202209072811

6.      The proposed class and subclasses (identified below) includes citizens of all states.

7.      Defendant BSH Home Appliances Corporation is a Delaware corporation with a principal place of business in Irvine, California.

8.      Defendant makes, distributes, sells, and markets gas stoves, ovens, and range products (including under the brand names Thermador and Bosch), and has done so throughout any applicable statute of limitations period.

## III.   Jurisdiction and Venue.

9.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d). Defendant would be subject to personal jurisdiction in this District if this District were a separate state. Defendant has its principal place of business in this District.

## IV.   Facts.

12.     About 40% of American households use natural gas stoves.[4] Many households use the stove daily to cook in the home.

13.     Defendant makes, markets, and sells residential gas stoves, gas ranges, and gas ovens ("Defendant's Products" or "Products"), including under brand names such as Thermador and Bosch.  Some examples of Defendant's Products are shown below:[5]

---

[4] https://www.washingtonpost.com/business/energy/biden-isnt-coming-for-your-gas-stove-states-are/2023/01/13/12353d1e-9353-11ed-90f8-53661ac5d9b9_story.html

[5] https://www.thermador.com/us/products/ranges



**60-Inch Ranges** ›



**48-Inch Ranges** ›



**36-Inch Ranges** ›



**30-Inch Ranges** ›

14.     Defendant sells its products specifically for home use, and markets to consumers for home use.  In fact, the only intended use for Defendant's Products is for cooking inside the home.

**A.    Gas stoves produce health-harming pollutants.**

15.     Recent studies have confirmed that gas stoves harm the health of the households that use it.[6]  Gas stoves "emit air pollutants such as nitrogen dioxide, carbon

---

[6] https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-health-risk-a6971504915/

monoxide and fine particulate matter at levels the EPA and World Health Organization have said are unsafe and linked to respiratory illness, cardiovascular problems, cancer, and other health conditions."[7]

16.     In particular, nitrogen oxides (sometimes written as NOx or NO2),[8] are hazardous to human health. "A recent study published by researchers at Stanford calculated that emission of nitrogen dioxide from certain gas burners or ovens rose above the standard set for outdoors by the Environmental Protection Agency (EPA) within a few minutes."[9]

17.     Further, "recent EPA research also linked long-term NO2 exposure to cardiovascular effects, diabetes, poorer birth outcomes, premature mortality, and cancer."[10] It is also linked to "reduced cognitive performance, especially in children." *Id.* "[E]arly-life exposure to air pollution from indoor gas appliances may be negatively associated with neuropsychological development through the first 4 years of life, particularly among genetically susceptible children." *Id.* "The gases can worsen asthma and other lung diseases."[11] "In short, research shows that even low levels of NO2 exposure are dangerous, especially to the vulnerable."[12]

18.     "Yet…homes with gas stoves have around 50 percent, ranging up to over 400 percent, higher levels of NO2 than homes with electric stoves."[13] Concentrations of

---

[7] https://www.bloomberg.com/news/articles/2023-01-09/us-safety-agency-to-consider-ban-on-gas-stoves-amid-health-fears

[8] The term NOx is a common term for nitrogen oxides that include nitric oxide (NO) and nitrogen dioxide (NO2). https://www.encyclopedia.com/earth-and-environment/ecology-and-environmentalism/environmental-studies/nox-nitrogen-oxides

[9] https://www.health.harvard.edu/blog/have-a-gas-stove-how-to-reduce-pollution-that-may-harm-health-202209072811

[10] https://www.vox.com/energy-and-environment/2020/5/7/21247602/gas-stove-cooking-indoor-air-pollution-health-risks

[11] https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-health-risk-a6971504915/

[12] https://www.vox.com/energy-and-environment/2020/5/7/21247602/gas-stove-cooking-indoor-air-pollution-health-risks

[13] https://www.vox.com/energy-and-environment/2020/5/7/21247602/gas-stove-cooking-indoor-air-pollution-health-risks

NO2 emissions from gas stoves can exceed US outdoor pollution standards several times over when conducting common cooking tasks like boiling water, baking a cake, roasting meat, and frying bacon with a gas stove.  *Id.*  Thus, children living in households with gas stoves are "42% more likely to have asthma."[14]  A recent study "found that 12.7%...of current childhood asthma in the US is attributable to gas stove use."[15] This is a level that is "similar to the childhood asthma burden attributed to secondhand smoke exposure."[16] Data shows that, "the higher the nitrogen dioxide level, the more severe the asthma symptoms in children and adults."[17]

19.    For these reasons, the American Medical Association recently adopted a resolution "recogniz[ing] the association between the use of gas stoves, indoor nitrogen dioxide levels and asthma," and committed to informing "members and, to the extent possible, health care providers, the public, and relevant organizations that use of a gas stove increases household air pollution and the risk of childhood asthma and asthma severity."[18]

**B.    Defendant knows of this pollutant risk.**

20.    Defendant is aware that its Products emit health-harming pollutants.

21.    Since the 1980s, the natural gas industry—of which Defendant is a constituent—has worried that the US Consumer Product Safety Commission would regulate gas stove emissions due to indoor air quality concerns.[19]

---

[14] https://www.health.harvard.edu/blog/have-a-gas-stove-how-to-reduce-pollution-that-may-harm-health-202209072811

[15] IJERPH | Free Full-Text | Population Attributable Fraction of Gas Stoves and Childhood Asthma in the United States (mdpi.com)

[16] IJERPH | Free Full-Text | Population Attributable Fraction of Gas Stoves and Childhood Asthma in the United States (mdpi.com)

[17] Have a gas stove? How to reduce pollution that may harm health - Harvard Health

[18] https://policysearch.ama-assn.org/policyfinder/detail/gas%20stove?uri=%2FAMADoc%2Fdirectives.xml-D-135.964.xml; https://publicinterestnetwork.org/updates/update-ama-moves-forward-resolution-gas-stove-pollution/

[19] https://www.npr.org/2023/02/04/1149736969/gas-stove-makers-have-a-pollution-solution-theyre-just-not-using-it; https://www.sciencenews.org/archive/cleaner-cooking-gas

22.  This is because "[s]cientists have long known that gas stoves emit pollutants that irritate human airways and can cause or exacerbate respiratory problems."[20] "[S]tudies dating back decades have shown harmful effects from the NO2 in gas cooking stoves."[21]

23.   In 1986, a report by the Clean Air Scientific Advisory Committee of the U.S. Environmental Protection Agency stated, "Health effects data from epidemiological studies in gas stove homes suggest that young children are at increased risk of respiratory symptom; and infection from exposures to elevated concentrations of N02. Other groups at risk to N02 exposures are asthmatics and bronchitics."[22] It further warned, "Human epidemiologic studies suggest that exposure to nitrogen dioxide may lead to increased respiratory illness rates among children."  *Id.* at 6.

24.   Subsequent studies have confirmed the harmful effects of pollutants from gas stoves.  "In a 1992 meta-analysis of studies on this topic, scientists at the EPA and Duke University found that nitrogen dioxide exposure that is comparable to that from a gas stove increases the odds of children developing a respiratory illness by about 20 percent."[23]  "A 2013 meta-analysis of 41 studies found that gas cooking increases the risk of asthma in children and that NO2 exposure is linked with currently having a wheeze." *Id.*  And "[m]ost recently, a study published last December found that 12.7 percent of childhood asthma cases in the U.S. can be attributed to gas stove use." *Id.*

25.   Like other makers of gas stoves, Defendant monitors and keeps track of research on the health effects of its products.  This is diligence that large companies like Defendant routinely do when selling a consumer product.   Defendant is aware of the fact that its Products emit harmful pollutants.  It is further aware that use of gas stoves increases the rates of respiratory illness in adults and children.

---

[20] https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/
[21] https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/
[22] Report of the Clean Air Scientific Advisory Committee, May 9, 1986, at 5.
[23] https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/

**C.      Safe alternative designs that would reduce the danger are available.**

26.      Further, the harms could have been avoided through safe, reasonable alternative designs.  Alternative gas stove designs that "reduce harmful emissions, without sacrificing heat, have been available for decades."[24]  As one example, the "jet-powered infrared gas-range burner," developed in the 1980s, "consumed about 40% less natural gas to reach cooking temperatures and emitted 40% less nitrogen oxides."[25] Another design proposed in the 1980s was the use of a flame insert, which cuts the NOx emissions "more than 40 percent" when the burner is turned on high, and even more at low burner settings.[26]

27.      Despite this, Defendant failed to use an alternative design to avoid these harms and reduce harmful pollutants from gas stoves.

**D.      Defendant should have warned of the pollutant risk.**

28.      While Defendant is aware of the harmful health effects of gas cooking, everyday consumers are unaware of these risks.  Consumers shopping for a new oven, range, or stove have very little information about the health risks of gas appliances.

29.      Consumers remain unaware because nothing on Defendant's packaging, instructions, or warning labels suggest that the gas stoves regularly emit pollutants that are harmful to human health. Further, the labels and warnings do not mention any risk of nitrogen oxides.

30.      Defendant sold its Products for cooking inside the home, while omitting any warning of the serious defect due to the harmful emissions.  Defendant knew of the defect, but actively concealed it.  Defendant should have, but did not, warn consumers of the fact that its Products emit harmful pollutants when used for cooking.  Defendant should have, but did not, warn consumers of the risk of nitrogen oxides. These warnings

---

[24] https://www.npr.org/2023/02/04/1149736969/gas-stove-makers-have-a-pollution-solution-theyre-just-not-using-it
[25] https://www.npr.org/2023/02/04/1149736969/gas-stove-makers-have-a-pollution-solution-theyre-just-not-using-it
[26] https://www.sciencenews.org/archive/cleaner-cooking-gas

could have been included on the packaging, stickers, or instruction manual for the product.  But Defendant did not include any such warning.

31.    Defendant had a duty to warn of the defect.  The defect was an unreasonable safety hazard.  Defendant could have avoided this risk by using available design-arounds.  In addition, the defect was central to the gas stove's function (i.e. its safety for use cooking inside the home).  Defendant had exclusive knowledge of the defect (which is unknown to everyday consumers), and Defendant actively concealed the defect from consumers by failing to disclose it.  Defendant also made partial representations that are misleading because other material facts were not disclosed.  For example, it warned of some risks of the Product (e.g., it included extensive warnings about fire), but failed to warn that the Product emits harmful pollutants like nitrogen oxide.  This led consumers to believe that there was no such risk.

**E.    Defendant overcharges millions of consumers.**

32.    If Defendant disclosed the truth— that is, that its Products emit harmful pollutants, the price of its Products would fall dramatically.

33.    For example, a recent study showed that consumer demand for gas stoves falls as consumers become informed of the harms of gas stoves. Forty-six percent of gas-stove owning adults were interested in replacing their gas stoves after being informed of the study showing the link between gas stove pollution and childhood asthma.[27]

34.    If consumers knew the truth, demand for Defendants' prices would drop, and Defendants could not sell their Products at current prices.

35.    In addition, the defective design of gas stoves reduces their value. Consumers pay for a stove that is safe for home cooking, but receive a less valuable stove—one with a defective design that carries significant (and undisclosed) air pollution risks.

---

[27] https://morningconsult.com/2023/01/31/natural-gas-stove-bans-remain-divisive/

**F.      Plaintiff was misled and harmed by Defendant.**

36.      In August or September of 2017, Plaintiff purchased a Thermador gas stove from Pacific Sales Kitchen and Home in Rancho Mirage, California.  The stove had the model number of PRG486WDH.[28]



37.      In purchasing the item, Mr. Hedrick relied on the representations on the marketing materials and stickers on the stove disclosing risks.  The marketing materials, and stickers did not disclose or warn that the product emitted harmful pollutants, such as nitrogen oxides, or disclose the risks of these pollutants. Thus, at the time of purchase, Plaintiff was unaware that the product emitted harmful pollutants such as nitrogen oxide.

38.      Plaintiff did not discover the truth until fall of 2022, when he saw news reports of the risks of harmful pollutants from gas stoves.  He could not have made the discovery earlier despite reasonable diligence.  Reasonable consumers do not conduct independent research on potential defects of consumer products.  Instead, it was only

---

[28] https://www.thermador.com/us/products-list/ranges/48 ranges/PRG486WDH#/Tabs=section-technical-overview/Togglebox=accessories/Togglebox=manuals/Togglebox=accessoriesOthers/

after there was widespread media coverage of the issue (in fall of 2022), that Plaintiff discovered the truth.  Prior to this date, Plaintiff was unaware of the defect and these risks.

39.    Plaintiff purchased Defendant's Product on the assumption that using the Product would not expose him to a significant air pollutant risk. Plaintiff would not have purchased Defendant's Product had he known that it emitted harmful pollutants like nitrogen oxide.

40.    As a result, Plaintiff suffered injury in fact when he: (a) spent money to purchase a Product he would not otherwise have purchased absent Defendant's misconduct; (b) overpaid for the Product due to Defendant's misconduct; and (c) paid for a defective product that, in truth, is worth less than he paid for it.

41.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff likes Defendant's Products, and would purchase Defendant's Products in the future if the Product was redesigned to avoid emitting harmful pollutants. He faces an imminent risk of harm, however, because he cannot rely on representations that the Product is safe for cooking inside the home or the absence of any pollutant warning. Absent injunctive relief, Defendant may continue to advertise, promote, and sell the Products while representing that it is safe, and without warning the public about the health risks.

### G.    No adequate remedy at law.

42.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

43.    A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Product he received has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that he would not otherwise have purchased, but for Defendant's omissions.  Obtaining a full refund at law is less certain

that obtaining a refund in equity.

44.    In addition, the elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff' legal claims.  For example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

45.    Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

## V.    Class Action Allegations.

46.    Plaintiff brings certain claims on behalf of the proposed class of:

- Nationwide Class: all persons who purchased Defendant's Products while living in the United States during the applicable statute of limitations (the "Nationwide Class");

- California Subclass: all persons who, while living in the state of California, purchased Defendant's Products during the applicable statute of limitations; and

- Consumer Protection Subclass: all persons who, while living in certain identified states (the "Consumer Protection Subclass States"), purchased Defendant's Products during the applicable statute of limitations.

47.    The Consumer Protection Subclass States are as follows: California, Connecticut, Illinois, Maryland, Missouri, and New York.

48.    The following people are excluded from the proposed Class and Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly

11

execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

49.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### Numerosity & Ascertainability.

50.     The proposed class contains members so numerous that separate joinder of each member is impractical.  There are tens or hundreds of thousands of class members. The precise number of class members is unknown to Plaintiff at this time.

51.     Members of the proposed class can be identified through public notice.

### Predominance of Common Questions.

52.     There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(2) Whether Defendant's conduct was unfair and/or deceptive;

(3) Whether Defendant breached an implied warranty;

(4) What damages are needed to compensate Plaintiff and the proposed class; and

(5) Whether an injunction is necessary to prevent Defendant from continuing to deceptively market and sell the Products.

### Typicality & Adequacy.

53.     Plaintiff's claims are typical of the other class members' claims.  Like other class members, Plaintiff purchased Defendant's Product.

54.     The interests of the members of the proposed class and subclasses will be adequately protected by Plaintiff and his counsel. Plaintiff's interests are aligned with,

and do not conflict with, the interests of the members of the proposed class or subclasses that they seek to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute the class and subclasses' claims.

*Superiority.*

55.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that the same product is found unfit for its ordinary use for some proposed class members, but not for others.

56.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count I: Violation of California's Unfair Competition Law
### (on behalf of Plaintiff and the California Subclass)

58.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

59.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

60.    Defendant has violated California's Unfair Competition Law (UCL) by

13

engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

### The Unlawful Prong

61. As alleged in detail above and below, Defendant engaged in unlawful conduct by violating the CLRA, FAL, and Song-Beverly Consumer Warranty Act, as incorporated here.

### The Fraudulent Prong

62. As alleged in detail above, Defendant's representations and omissions concerning the product's defect were misleading. Defendant's representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

### The Unfair Prong

63. Defendant violated established public policy by violating the CLRA, the FAL, and the Song-Beverly Consumer Warranty Act, as alleged below and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and the Song-Beverly Consumer Warranty Act).

64. Defendant's conduct caused substantial injury to Plaintiff and Subclass members. The harm to Plaintiff and the Subclass greatly outweighs the public utility of Defendant's conduct (which is none). Defendant distributed household appliances that emit harmful pollutants, when reasonable alternative designs exist. Defendant also omitted any warning about these pollutants. These actions do not have public utility. This injury was not outweighed by any countervailing benefits to consumers or competition.

65. Plaintiff and the Subclass could not have reasonably avoided this injury. As alleged above, Defendant's representations and omissions were deceptive to reasonable consumers.

66. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

67. Defendant's conduct violated the public policy against misleading product

labels and defective products, which is tethered to the CLRA and FAL, as well as the Song-Beverly Consumer Warranty Act.

* * *

68.     For all prongs, Plaintiff saw and reasonably relied on Defendant's misleading representations and omissions when purchasing the Product.

69.     Defendant sold its Products specifically for cooking inside the home, while omitting any warning of the serious safety defect regarding harmful emissions. Defendant knew of the defect, but actively concealed it.  Defendant should have, but did not, warn consumers of the risk of harmful pollutants while cooking.  This warning could have been included on the packaging for the product, or on stickers on the product itself.  But Defendant did not include any such warning.

70.     As alleged in detail above, Defendant had a duty to warn of this defect.

71.     As alleged in detail above, Defendant's misleading representations and omissions were material.  The defect would have been important to the purchase of Plaintiff and other reasonable consumers.  Subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Defendant's Products. Defendant's misleading representations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of class members.

72.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Product if they had known of the defect, (b) they overpaid for the product because the product is sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

### **Count II: Violation of California's False Advertising Law (FAL)**
### **(on behalf of Plaintiff and the California Subclass)**

73.     Plaintiff incorporates by reference and re-alleges each and every allegation

set forth above in Sections I-IV as though fully set forth herein.

74.   Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

75.   As alleged more fully above, Defendant has falsely advertised its Products by misleadingly representing that the Products are safe and fit for cooking inside the home while omitting any warning that the Products emit harmful pollutants.  Plaintiff relied on these representations and omissions.  The representations and omissions are misleading because the Products emit health-harming pollutants.  Defendant knew of this defect, but failed to include any warning about the defect.

76.   As alleged more fully above, Defendant's representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or reasonably should have known, that its representations and omissions were misleading.

77.   As alleged in detail above, Defendant's misrepresentations and omissions were material.  Thus, subclass-wide reliance can be inferred.

78.   As alleged in detail above, Defendant's representations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

79.   Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Product if they had known of the defect, (b) they overpaid for the product because the product is sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

### Count III: Violation of California's Consumer Legal Remedies Act (CLRA)
#### (on behalf of Plaintiff and the California Subclass)

80.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in Sections I-IV as though fully set forth herein..

81.     Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

82.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

83.     Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

84.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

85.     As alleged more fully above, Defendant has violated the CLRA by advertising its Products in a way that is misleading or is likely to deceive consumers. Defendant's statement and omissions led Plaintiff and other members of the California Subclass that its Products are safe and fit for ordinary use when cooking in the home, when in fact, the Products emit health-harming pollutants. Defendant has also violated the CLRA by failing to warn of a material defect with the product.

86.     As a result of engaging in such conduct, Defendant has violated California Civil Code §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9).

87.     As alleged more fully above, Defendant's conduct was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew that its product emitted harmful pollutants.  Defendant's failure to warn consumers that the Products emit harmful pollutants was deceptive.

88.     Plaintiff saw and reasonably relied on Defendant's misleading representations and omissions when purchasing the Product.

89.     As alleged in detail above, Defendant had a duty to warn of this defect.

90.     As alleged in detail above, Defendant's misleading representations and omissions were material.  Thus, subclass-wide reliance can be inferred.  Defendant's

misleading representations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

91. Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Product if they had known of the defect, (b) they overpaid for the product because the product is sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

92. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

93. CLRA § 1782 NOTICE. On February 14, 2023, Plaintiff mailed a notice letter to BSH Home Appliances Corporation at its Irvine, California headquarters. This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the class within 30 days of receipt, Plaintiff and the class will seek all monetary relief allowed under the CLRA.

**Count IV: Breach of Implied Warranty**

**Pursuant to Song-Beverly Consumer Warranty Act**

**(on behalf of Plaintiff and the California Subclass)**

94. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in Sections I-IV as though fully set forth herein.

95. Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

96. Plaintiff is a "buyer" within the meaning of Cal. Civ. Code §1791(b).

97. Defendant's Products are "consumer goods" within the meaning of Cal. Civ. Code §1791(a). Defendant's Products are for use inside of the house.

98.     Defendant is the "manufacturer" of Defendant's Products within the meaning of Cal. Civ. Code §1791(j). Defendant is in the business of manufacturing or distributing Defendant's Products.

99.     As alleged in detail above, Defendant is aware that the consumers purchase its Products for the purpose of cooking in the home.  Consumers, including the California Subclass, rely on the skill and judgment of Defendant as a supplier of home appliances when selecting products suitable for home use. Defendant knew that Plaintiff and class members would justifiably rely on Defendant's particular skill and knowledge of home appliances in selecting or furnishing products suitable for home cooking.  But the Products were not fit for the purpose.

100.     Defendant impliedly warranted that Defendant's Products were in merchantable condition and fit for the ordinary purpose for which the Products are used (cooking inside the home) under Cal. Civ. Code §§ 1791.1(a) & 1792.

101.     As alleged in detail above, Defendant's Products did not have the quality that a buyer would reasonably accept, and therefore were not merchantable.

102.     As alleged in detail above, Defendant's Products would not pass without objection in the home appliances trade because they emit harmful pollutants, and fail to warn of these risks.

103.     As alleged in detail above, Defendant's Products are not adequately labeled because they fail to disclose the risk of harmful pollutants.

104.     Defendant breached the implied warranty of merchantability and fitness by selling its Products containing defects.  These defects have deprived Plaintiff and the Subclass of the benefit of the bargain, and have caused the Products to depreciate in value.

105.     Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Product if they had known of the defect, (b) they overpaid for the product because the product is sold at a price premium due to Defendant's misleading representations and omissions, or

19

(c) they received a product that was defective and thus less valuable than what they paid for.

106.    Plaintiff and Subclass members are entitled to damages and other legal and equitable relief, costs, and attorneys' fees.

**Count V: Violations of State Consumer Protection Statutes**

**(on behalf of Plaintiff and the Consumer Protection Subclass)**

107.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in Sections I-IV as though fully set forth herein.

108.    This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|-------|---------|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

109.    Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.

110.    As alleged in detail above, Defendant's conduct, including the marketing and sale of its Products to consumers, violates each statute's prohibitions.

111.    As further alleged above, Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of

Subclass members.  Defendant's misrepresentations and omissions were misleading to a reasonable consumer, and Plaintiff and Subclass members reasonably relied on Defendant's misrepresentations.

112.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

113.    In this way, Plaintiff and the members of the proposed Subclass have suffered an ascertainable loss, in an amount to be determined at trial.

### Count VI: Breach of Implied Warranties
### (on behalf of Plaintiff and the Nationwide Class)

114.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in Sections I-IV as though fully set forth herein.

115.    Plaintiff brings this count individually and for the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Subclass.

### *Implied Warranty of Merchantability*

116.    The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

117.    Defendant is and was, at all relevant times, a merchant with respect to home appliances, and with respect to residential Products in particular.  Defendant's Products each constitutes a "good" under the UCC.

118.    Plaintiff and class members purchased Defendant's Products.

119.    As the manufacturer of residential gas stoves, Defendant impliedly

21

Case 8:23-cv-00358   Document 1   Filed 03/01/23   Page 24 of 28   Page ID #:24

warranted to Plaintiff and the class that the products were of merchantable quality and were safe for their ordinary use in home cooking. In fact, as described in detail above, the products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Specifically, the Products are inherently flawed given a defect in design making them emit health-harming pollutants when used to cook inside the home. The defective design makes them unfit for ordinary purposes even when used correctly. In addition, Defendant's Products are not adequately labeled because they fail to disclose the risk of harmful pollutants.

120. Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

121. Plaintiff and the class were foreseeable third-party beneficiaries of Defendant's sale of the Products. Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.

122. Defendant's breach directly caused Plaintiff and class members' harm. Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

### *Implied Warranty of Fitness*

123. The Uniform Commercial Code § 2-315 states that where a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

124. Plaintiff and class members purchased Defendant's Products for the particular purpose of cooking inside the home.

125.    As explained in detail above, Defendant knew, or had reason to know, that Plaintiff and class members were purchasing the Products for the particular purpose of cooking inside the home.

126.    Defendant markets itself as a knowledgeable and effective developer and purveyor of home appliances, such as gas stoves.

127.    As explained more fully above, Defendant knew, or had reason to know, that Plaintiff and class members would justifiably rely on Defendant's particular skill and knowledge of home appliances in selecting or furnishing products suitable for home use.

128.    Plaintiff and class members did justifiably rely on Defendant's judgment and skill.

129.    Due to the defect in the Products, the Products are not suitable for their intended purpose.

130.    As a result of the breach, Plaintiff and the class suffered economic harm and damage.  Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

<u>**Count VII: Fraudulent Omission**</u>

**(on behalf of Plaintiff and the Nationwide Class)**

131.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

132.    Plaintiff brings this count individually and for the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Subclass.

133.    As alleged in detail above, Defendant made materially misleading omissions concerning the safety of its Products.  Defendant concealed information about the

harmful pollutants emitted by its Products.

134.   In deciding to purchase consumable products from Defendant, Plaintiff and the class reasonably relied on Defendant's omissions to form the mistaken belief that the Products did not pose a significant pollutant risk.

135.   As alleged in detail above, Defendant's fraudulent conduct was knowing and intentional.  The omissions made by Defendant were intended to induce and actually induced Plaintiff and class members to purchase the Products.  Plaintiff would not have purchased the products had he known of the defect.  Class-wide reliance can be inferred because Defendant's omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

136.   As alleged in detail above, Defendant had a duty to disclose the defect.

137.   Plaintiff and class members were injured as a direct and proximate result of Defendant's fraudulent omissions because (a) they would not have purchased the product if they had known it was unsafe and unfit for use; (b) they overpaid for the product because it is sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

138.   Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## Count VIII: Unjust Enrichment / Quasi-contract
### (on behalf of Plaintiff and the Nationwide Class)

139.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

140.   Plaintiff brings this count individually and for the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of himself and the California

Subclass.

141.    Plaintiff and class members conferred a tangible and material economic benefit upon Defendant by purchasing the Products.

142.    In exchange for the purchase price, Defendant provided a defective product, without a reasonable warning. Defendant knew and appreciated the benefit they incurred from consumers purchasing Products.

143.    Thus, Defendant is aware of, and has retained, the unjust benefit conferred upon them by Plaintiff and the class members.

144.    Defendant received a direct and unjust benefit, at the Plaintiff's expense.

145.    Plaintiff and the class seek restitution.

## VII.   Jury Demand.

146.    Plaintiff demands a jury trial on all issues so triable.

## VIII.  Prayer for Relief.

147.    Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiff as representative for the Nationwide Class and each Subclass, and appointing their counsel as lead counsel for the classes;
- A judgment in favor of Plaintiff and the proposed classes;
- Damages, treble damages, statutory damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just relief;
- An order awarding Plaintiff and all other class members damages in an amount to be determined at trial for the wrongful acts of Defendant;
- Pre- and post-judgment interest on all amounts awarded;
- Injunctive relief as pleaded or as the Court may deem proper;

- Reasonable attorneys' fees and costs, as allowed by law;
- Punitive damages; and
- Any additional relief that the Court deems reasonable and just.

Dated: March 1, 2023                              Respectfully submitted,

                                                  By: */s/ Christin Cho*

                                                  Christin Cho (Cal Bar No. 238173)
                                                  christin@dovel.com
                                                  Simon Franzini (Cal. Bar No. 287631)
                                                  simon@dovel.com
                                                  Jonas B. Jacobson (Cal. Bar No. 269912)
                                                  jonas@dovel.com
                                                  DOVEL & LUNER, LLP
                                                  201 Santa Monica Blvd., Suite 600
                                                  Santa Monica, California 90401
                                                  Telephone: (310) 656-7066
                                                  Facsimile: (310) 656-7069

                                                  *Attorneys for Plaintiff*