O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HEDRICK and NICHOLAS KALERGIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BSH HOME APPLIANCES CORPORATION,<br><br>Defendant. | Case No. 8:23-cv-00358 JWH JDE<br><br>**ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS [ECF No. 38 in the Hedrick Case; ECF No. 31 in the Goldstein Case; and ECF No. 34 in the Norris Case]** |
| DEBRA GOLDSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br><br>Defendant. | Case No. 2:23-cv-04752-JWH-JDE |
| ELLYN NORRIS and A.J. STONE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Case No. 5:23-cv-01496-JWH-JDE |

Before the Court are three motions to dismiss filed in the three above-captioned related cases:[1]

- the motion of Defendant BSH Home Appliances Corporation[2] to dismiss the Second Amended Complaint[3] filed by Plaintiffs Robert Hedrick and Nicholas Kalergis, individually and on behalf of all others similarly situated, in the *Hedrick* Case;
- the motion of Defendant Whirlpool Corporation[4] to dismiss the First Amended Complaint[5] filed by Plaintiff Debra Goldstein, individually and on behalf of all others similarly situated, in the *Goldstein* Case; and
- the motion of Defendant Samsung Electronics America, Inc.[6] to dismiss the First Amended Complaint[7] filed by Plaintiffs Ellyn Norris and A.J. Stone, individually and on behalf of all others similarly situated, in the *Norris* Case.

Because the *Hedrick* Case, the *Goldstein* Case, and the *Norris* Case contain similar allegations and share common questions of law, the Court addresses these three Motions simultaneously. After considering the papers filed in support and in opposition, as well as the arguments of counsel during the hearing on these Motions,[8] the Court orders that the Motions are **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

---

[1]    *See Robert Hedrick v. BSH Home Appliances Corp.*, Case No. 8:23-cv-00358-JWH-JDE (C.D. Cal) (the "Hedrick Case"); *Debra Goldstein v. Whirlpool Corp.*, Case No. 2:23-cv-04572-JWH-JDE (C.D. Cal) (the "Goldstein Case"); *Ellyn Norris v. Samsung Electronics America, Inc.*, Case No. 5:23-cv-01496-JWH-JDE (C.D. Cal) (the "Norris Case").

[2]    Def. BSH Home Appliances Corporation's Mot. to Dismiss Second Am. Compl. in the *Hedrick* Case [ECF No. 38] (the "*Hedrick* Motion").

[3]    Second Am. Compl. in the *Hedrick* Case [ECF No. 36] (the "*Hedrick* Amended Complaint").

[4]    Def. Whirlpool Corporation's Mot. to Dismiss First Am. Compl. in the *Goldstein* Case [ECF No. 31] (the "*Goldstein* Motion").

[5]    First Am. Compl. in the *Goldstein* Case [ECF No. 30] (the "*Goldstein* Amended Complaint").

[6]    Def. Samsung Electronics America, Inc.'s Mot. to Dismiss First Am. Compl. in the *Norris* Case [ECF No. 34] (the "*Norris* Motion").

[7]    First Am. Compl. in the *Norris* Case [ECF No. 30] (the "*Norris* Amended Complaint").

[8]    The Court considered the documents of record in this action, including the following papers: (1) *Hedrick* Amended Complaint (including its attachments); (2) *Hedrick* Motion; (3) Pls.' Opp'n to the *Hedrick* Motion (the "*Hedrick* Opposition") [ECF No. 42] (including its attachment); (4) Def.'s Reply in Supp. of the *Hedrick* Motion (the "*Hedrick* Reply") [ECF No. 49]; (5) *Goldstein* Amended Complaint (including its attachments); (6) *Goldstein* Motion (including its attachments); (7) Pl.'s Opp'n to the *Goldstein* Motion (the "*Goldstein* Opposition") [ECF No. 36]; (8) Def.'s Reply in Supp. of the *Goldstein* Motion (the "*Goldstein* Reply") [ECF No. 38]; (9) *Norris* Amended Complaint (including its attachment); (10) *Norris*

# I.  BACKGROUND

## A.    Procedural History

In March 2023, Hedrick, individually and on behalf of all others similarly situated, commenced the *Hedrick* Case in this Court.[9]  Kalergis joined the *Hedrick* Case as a named plaintiff in October 2023.[10]  In June 2023, Goldstein, individually and on behalf of all others similarly situated, commenced the *Goldstein* Case in this Court.[11]  In July 2023, Norris and Stone, individually and on behalf of all others similarly situated, commenced the *Norris* Case in this Court.[12]  In October and November 2023, Defendants moved to dismiss the operative Amended Complaints in the *Hedrick*, *Goldstein*, and *Norris* Cases. In April 2024, the parties filed supplemental briefing with respect to the instant Motions.

## B.    Factual Allegations

In this section the Court summarizes the allegations set forth in the *Hedrick*, *Goldstein*, and *Norris* Cases.  In connection with the instant Motions to dismiss, the Court expresses no view regarding the veracity of these allegations.  *See Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  The Court refers to Hedrick, Kalergis, Goldstein, Norris, and Stone collectively as "Plaintiffs."  The Court refers to BSH, Whirlpool, and Samsung collectively as "Defendants."

In August or September 2017, Hedrick purchased a gas stove made by BSH in California.[13]  In October 2020, Kalergis purchased a gas stove made by BSH in Illinois.[14] In September 2022, Goldstein purchased a gas stove made by Whirlpool in California.[15]

---

Motion (including its attachments); (11) Pls.' Opp'n to the *Norris* Motion (the "*Norris* Opposition") [ECF No. 36]; (12) Def.'s Reply in Supp. of the *Norris* Motion (the "*Norris* Reply") [ECF No. 38]; (13) Pls.' Supplemental Authority Brief ("Plaintiffs' Supplemental Brief") [ECF No. 61 in the *Hedrick* Case; ECF No. 56 in the *Goldstein* Case; and ECF No. 56 in the *Norris* Case]; and (14) Def.'s Supp. to the Motion ("Defendants' Supplemental Brief") [ECF No. 62 in the *Hedrick* Case; ECF No. 57 in the *Goldstein* Case; and ECF No. 57 in the *Norris* Case].

[9]      Compl. [ECF No. 1] in the *Hedrick* Case.

[10]     *Hedrick* Amended Complaint.

[11]     Compl. [ECF No. 1] in the *Goldstein* Case.

[12]     Compl. [ECF No. 1] in the *Norris* Case.

[13]     *Hedrick* Amended Complaint ¶¶ 3 & 44.

[14]     *Id.* at ¶¶ 3 & 45.

[15]     *Goldstein* Amended Complaint ¶ 46.

In December 2020, Norris purchased a gas stove made by Samsung in California.[16]  In
January 2020, Stone purchased a gas stove made by Samsung in California.[17]

In the fall of 2022, Hedrick and Stone learned of the existence of risks of harmful
pollutants emanating from gas stoves.[18]  In 2023, Kalergis, Goldstein, and Norris also
learned of the existence of risks of harmful pollutants emanating from gas stoves.[19]

Each Amended Complaint contains allegations that gas stoves, including those
made by Defendants, emit air pollutants that can be hazardous to human health.[20]
Defendants are aware that their respective products emit health-harming pollutants.[21]
The natural gas industry, of which Defendants are member-manufacturers, "has worried
that the US Consumer Product Safety Commission would regulate gas stove emissions
due to indoor air quality concerns" because studies "dating back decades" have shown
the harmful effects from the chemicals released when one uses a gas cooking stove.[22]
Defendants monitor and keep track of research on the health effects of those pollutants.[23]
Therefore, Defendants would have been aware of potential and actual regulations of gas
stoves due to the emissions of health-harming pollutants.[24]

Although safe alternative designs are available, Defendants have failed to use an
alternative design to avoid those harms or to reduce the emission of harmful pollutants
from gas stoves.[25]

---

[16]     *Norris* Amended Complaint ¶ 47.

[17]     *Id.* at ¶ 48.

[18]     *Hedrick* Amended Complaint ¶ 49; *Norris* Amended Complaint ¶ 56.

[19]     *Hedrick* Amended Complaint ¶ 52; *Goldstein* Amended Complaint ¶ 50; *Norris* Amended
Complaint ¶ 52.

[20]     *Hedrick* Amended Complaint ¶¶ 1-22; *Goldstein* Amended Complaint ¶¶ 1-30; *Norris*
Amended Complaint ¶¶ 1 & 3.

[21]     *Hedrick* Amended Complaint ¶ 23; *Goldstein* Amended Complaint ¶ 24; *Norris* Amended
Complaint ¶ 23.

[22]     *Hedrick* Amended Complaint ¶¶ 23-27; *Goldstein* Amended Complaint ¶ 25; *Norris*
Amended Complaint ¶ 24.

[23]     *Hedrick* Amended Complaint ¶ 28; *Goldstein* Amended Complaint ¶ 29; *Norris* Amended
Complaint ¶ 28.

[24]     *Hedrick* Amended Complaint ¶ 29; *Goldstein* Amended Complaint ¶ 30; *Norris* Amended
Complaint ¶ 30.

[25]     *Hedrick* Amended Complaint ¶¶ 30 & 31; *Goldstein* Amended Complaint ¶¶ 31 & 32;
*Norris* Amended Complaint ¶¶ 31 & 32.

Consumers are unaware of those risks.[26] Defendants' packaging, instructions, and warning labels do not mention that gas stoves regularly emit pollutants that are harmful to human health.[27] Additionally, Defendants made "partial representations" that are misleading, because Defendants warned of some risks of their products (such as the risks of fire and tipping), but Defendants failed to warn that their products emit harmful pollutants, which led consumers to believe that there was no such risk.[28] Further, Defendants affirmatively represented that their products were safe and fit for ordinary home cooking by selling the products for home use and marketing those products as for the "home."[29]

Although no Plaintiff has experienced any health problems with respect to Defendants' products, Plaintiffs nevertheless spent money to purchase products that they would not otherwise have purchased absent Defendants' misconduct; Plaintiffs overpaid for the products due to Defendants' misconduct; and Plaintiffs paid for defective products that are worth less than Plaintiffs paid for those products.[30]

Plaintiffs bring these actions individually and on behalf of the following proposed classes:

<u>Nationwide Class</u>:  all persons who purchased Defendant's Products while living in the United States during the applicable statute of limitations;

<u>California Subclass</u>:  all persons who, while living in the state of California, purchased Defendant's Products during the applicable statute of limitations;

<u>Illinois Subclass</u> (*Hedrick* Case only): all persons who, while living in the state of Illinois, purchased BSH's Products during the applicable statute of limitations; and

---

[26]    *Hedrick* Amended Complaint ¶ 33; *Goldstein* Amended Complaint ¶ 34; *Norris* Amended Complaint ¶ 34.

[27]    *Hedrick* Amended Complaint ¶ 33; *Goldstein* Amended Complaint ¶ 34; *Norris* Amended Complaint ¶ 36.

[28]    *Hedrick* Amended Complaint ¶¶ 35 & 36; *Goldstein* Amended Complaint ¶¶ 35-37; *Norris* Amended Complaint ¶¶ 36 & 37.

[29]    *Hedrick* Amended Complaint ¶ 38; *Goldstein* Amended Complaint ¶ 38; *Norris* Amended Complaint ¶ 39.

[30]    *Hedrick* Amended Complaint ¶ 55; *Goldstein* Amended Complaint ¶ 52; *Norris* Amended Complaint ¶ 58.

Consumer Protection Subclass: all persons who, while living in California, Connecticut, Illinois, Maryland, Missouri, and New York, purchased Defendant's Products during the applicable statute of limitations.[31]

Plaintiffs assert the following nine claims for relief:

- violation of California's Unfair Competition Law (the "UCL");[32]
- violation of California's False Advertising Law (the "FAL");[33]
- violation of California's Consumer Legal Remedies Act (the "CLRA");[34]
- breach of implied warranty, pursuant to Song-Beverly Consumer Warranty Act (the "SBA");[35]
- breach of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (*Hedrick* Case only) (the "ICFA");[36]
- violations of State Consumer Protection Statutes;[37]
- breach of implied warranties;[38]
- fraudulent omission;[39] and
- unjust enrichment/quasi-contract.[40]

---

[31]    *Hedrick* Amended Complaint ¶¶ 61 & 62; *Goldstein* Amended Complaint ¶¶ 59 & 60; *Norris* Amended Complaint ¶¶ 64.

[32]    *Hedrick* Amended Complaint ¶¶ 73-87; *Goldstein* Amended Complaint ¶¶ 71-85; *Norris* Amended Complaint ¶¶ 76-90.

[33]    *Hedrick* Amended Complaint ¶¶ 88-94; *Goldstein* Amended Complaint ¶¶ 86-92; *Norris* Amended Complaint ¶¶ 91-97.

[34]    *Hedrick* Amended Complaint ¶¶ 95-108; *Goldstein* Amended Complaint ¶¶ 93-106; *Norris* Amended Complaint ¶¶ 98-111.

[35]    *Hedrick* Amended Complaint ¶¶ 109-121; *Goldstein* Amended Complaint ¶¶ 107-119; *Norris* Amended Complaint ¶¶ 112-123.

[36]    *Hedrick* Amended Complaint ¶¶ 122-136.

[37]    *Id.* at ¶¶ 137-143; *Goldstein* Amended Complaint ¶¶ 120-126; *Norris* Amended Complaint ¶¶ 124-130.

[38]    *Hedrick* Amended Complaint ¶¶ 144-160; *Goldstein* Amended Complaint ¶¶ 127-143; *Norris* Amended Complaint ¶¶ 131-139.

[39]    *Hedrick* Amended Complaint ¶¶ 161-168; *Goldstein* Amended Complaint ¶¶ 144-151; *Norris* Amended Complaint ¶¶ 140-147.

[40]    *Hedrick* Amended Complaint ¶¶ 169-175; *Goldstein* Amended Complaint ¶¶ 152-158; *Norris* Amended Complaint ¶¶ 148-154.

## II.  LEGAL STANDARD

### A.    Rule 12(b)(1)—Standing and Preemption

As the party seeking to invoke the federal court's jurisdiction, a plaintiff has the burden of alleging specific facts sufficient to prove that she has Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Indeed, the plaintiff bears the burden of demonstrating standing "for each claim" and "for each form of relief" that she seeks.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted).  When a defendant believes that the plaintiff has failed to establish that she has standing, the Federal Rules of Civil Procedure allow that defendant to move for dismissal based upon lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The court should dismiss an action when the face of the complaint does not demonstrate a basis for standing.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); Fed. R. Civ. P. 8(a) & 12(b)(1).

Preemption is a matter of subject matter jurisdiction.  *See McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018).

### B.    Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n*, 277 F.3d at 1120.  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct."  *Id.* at 679.

C.    **Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## III.  ANALYSIS

A.    **Article III Standing**

Defendants assert that Plaintiffs lack standing to maintain these actions; that Plaintiffs lack standing to pursue claims under consumer protection statutes of states to which they have no connection; and that Plaintiffs lack standing to assert claims regarding products that they did not purchase.[41] The Court addresses each argument in turn.

1.    **Applicable Law**

The Supreme Court clarified the requirements of Article III standing in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In that case, the Supreme Court directed that the Constitution confines federal power to the resolution of "Cases" and "Controversies" and that those requirements demand that a party must have a personal stake in the case. *See id.* at 2203 (citation omitted). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (citation and quotation omitted). Further, "[r]equiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only 'the rights of individuals[]' . . . and that federal courts exercise 'their proper function in a limited and separated government.'" *Id.* (internal citations and quotations omitted). "In sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* (citing *American Legion v. American Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)). "At an 'irreducible constitutional minimum,' standing requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson v. Brammer*,

---

[41]    *Hedrick* Motion 14:9-19:26; *Goldstein* Motion 17:10-21:8; *Norris* Motion 15:20-20:18.

616 F.3d 1045, 1056 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiffs suffer an "injury in fact" when the class members "paid more" for the product "than they otherwise would have paid, or bought it when they otherwise would not have done so," because the defendant "made deceptive claims and failed to disclose" important information. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *see also In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 351 (N.D. Cal. 2018) (the plaintiffs' alleged economic injury from overpaying for defective modems constituted an injury in fact); *Montanez v. Gerber Childrenswear, LLC*, 2011 WL 6757875, at *2 (C.D. Cal. Dec. 15, 2011) (concluding that the unnamed class members had "sufficient standing because they spent money on a product that was (allegedly) less valuable than it was represented to be by Defendant").

Courts "have required plaintiffs to allege 'something more' than 'overpaying for a "defective" product.'" *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1039 (N.D. Cal. 2014) (citations omitted). At the pleading stage, a plaintiff must "offer detailed, non-conclusory factual allegations of the product defect." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 (C.D. Cal. 2011). For example, a plaintiff may set forth "factual allegations tying an economic loss to a 'market effect.'" *Id.* Economic injury cannot rest "solely upon the existence of a speculative risk of future harm." *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 971 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017); *see also Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010) ("to the extent that an increased risk of harm could constitute an injury-in-fact in a product liability case such as this one, Plaintiffs must plead a credible or substantial threat to their health or that of their children to establish their standing to bring suit").

However, an "alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent" if it rests on a "hypothetical risk" of a health problem where consumers may or may not choose to use the product in a risky manner. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009); *see also Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1283 (C.D. Cal. 2016) (concluding that the plaintiffs' claims that their vehicles' keyless fob systems are defective because the plaintiffs can use them in a dangerous way is simply a conjectural and hypothetical injury that depends entirely on the plaintiffs' parking their vehicles in an enclosed space and walking away from their vehicles without turning them off).

Another district court in California has conferred standing in an analogous case. Plaintiff Charles Drake filed in the Northern District of California an action that is similar to the instant cases. Drake alleges that Defendant Haier's gas stoves are defective

because they emit air pollutants that cause health conditions.  *See Drake v. Haier US Appliance Sols. Inc.*, 2024 WL 590597, at *1 (N.D. Cal. Feb. 13, 2024).  In February 2024, the district court concluded that Drake has standing to assert his claims.  *See id.* at *4.

### 2.  Application

#### a.  Standing for the Instant Actions

After considering the relevant facts and the applicable law, the Court concludes that Plaintiffs have Article III standing.  Defendants contend that Plaintiffs have set forth "unsupported conclusory allegations,"[42] but the Court is not persuaded.  Plaintiffs allege that Defendants' gas stoves produce unsafe levels of pollutants during their normal use.[43]  Plaintiffs assert that, had they known of the risk of pollutants from the use of Defendants' gas stoves, they would not have purchased those products.[44]  Plaintiffs aver that if consumers "knew the truth," then Defendants could not sell their products at the current prices.[45]  For example, in late 2022 and early 2023, media articles reported the potential health risks from gas stoves and, as a result of those articles, demand for gas stoves has dropped.[46]  Plaintiffs further contend that many jurisdictions are considering, or have even approved, a natural gas appliance ban, which decreases the demand for gas stoves.[47]

Those allegations "offer detailed, non-conclusory factual allegations of the [alleged] product defect" in Defendants' gas stoves.  *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1166.  Thus, the Court concludes that Plaintiffs have alleged "something more" than merely "overpaying for a 'defective product.'"  *Opperman*, 87 F. Supp. 3d at 1039 (citation omitted).

Agreeing with the *Drake* court's analysis, this Court concludes that Plaintiffs' allegations in these cases contrast with those in *Birdsong* and *Lassen* because here Plaintiffs allege that the danger posed by gas stoves is inherent to Defendants' products, not merely when those products are used in an unsafe manner.  *See Drake*, 2024 WL

---

[42]    Defendants' Supplement Brief 7:28-8:1.

[43]    *Hedrick* Amended Complaint ¶¶ 16-27 & 43; *Goldstein* Amended Complaint ¶¶ 15-23; & *Norris* Amended Complaint ¶¶ 16-22.

[44]    *Hedrick* Amended Complaint ¶ 3; *Goldstein* Amended Complaint ¶ 3; *Norris* Amended Complaint ¶ 3.

[45]    *Hedrick* Amended Complaint ¶¶ 41 & 42; *Goldstein* Amended Complaint ¶ 44; & *Norris* Amended Complaint ¶ 41.

[46]    *Goldstein* Amended Complaint ¶ 41; *Norris* Amended Complaint ¶ 42.

[47]    *Goldstein* Amended Complaint ¶ 43; *Norris* Amended Complaint ¶ 44.

590597, at *4.  Accordingly, Plaintiffs have Article III standing to bring these actions.
The Motions are **DENIED** with respect to standing in general.

### b.    Standing to Assert Claims Arising from Other States

Plaintiffs seek to represent consumers who purchased products in states with
materially similar laws.[48]  On a motion to dismiss, "[c]ourts routinely dismiss claims
where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce."
*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) (citation
omitted).  Still, other courts have concluded that "whether a plaintiff can bring claims on
behalf of unnamed plaintiffs under the laws of states in which the named plaintiff does not
reside or was injured is a matter of typicality, adequacy, and predominance under Rule 23,
not Article III standing."  *Lopez v. Zarbee's, Inc.*, 2023 WL 210878, at *8 (N.D. Cal.
Jan. 17, 2023).  "Whirlpool agrees [that Goldstein's] standing to bring out-of-state claims
does not have to be resolved now."[49]  The Court concludes that this issue is better
resolved later, perhaps at the class-certification stage, rather than now, at the motion-to-
dismiss stage.  Accordingly, the Motions are **DENIED** with respect to this issue.

### c.    Standing to Assert Claims Regarding Other Products

Defendants contend that Plaintiffs lack standing to maintain a lawsuit for non-
purchased products.[50]  Whether a named plaintiff "can properly represent a class of
persons who purchased other products is a matter to be considered at the class
certification stage, not the pleading stage.  Any material differences between the products
are more properly addressed in the context of class certification determinations about
typicality and adequacy."  *Kumar v. Salov N. Am. Corp.*, 2015 WL 457692, at *5 (N.D.
Cal. Feb. 3, 2015).  In view of that analysis by a sister district court, which this Court finds
compelling, the Motions are **DENIED** with respect to this issue.

### d.    Statutory Standing

To the extent that Defendants raise additional arguments regarding standing, the
Court is not convinced.  When "a consumer purchases merchandise on the basis of false
price information, and when the consumer alleges that he would not have made the
purchase but for the misrepresentation, he has standing to sue under the UCL and FAL
because he has suffered an economic injury."  *Hinojos v. Koh's Corp.*, 718 F.3d 1098, 1107
(9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).  Additionally,

---

[48]     *Hedrick* Opposition 12:12-14; *Goldstein* Opposition 13:15-18; *Norris* Opposition 14:14-15.

[49]     *Goldstein* Reply 7:27-28 n.1.

[50]     *Hedrick* Motion 19:20-26; *Norris* Motion 19:21-20:18.

the Court concludes that Kalergis maintains standing under the ICFA.  Plaintiffs also
maintain standing under the CLRA, because "any plaintiff who has standing under the
UCL's and FAL's 'lost money or property' requirement will . . . have suffered 'any
damage' for purposes of establishing CLRA standing."  *Id.* at 1108.

## B.    Preemption

### 1.    Applicable Law

A preemption analysis "'start[s] with the assumption that the historic police
powers of the States were not to be superseded by the Federal Act unless that was the
clear and manifest purpose of Congress.'"  *Engine Mfrs. Ass'n v. South Coast Air Quality*,
498 F.3d 1031, 1039 (9th Cir. 2007) (citations omitted).  Federal preemption is an
affirmative defense, and Defendants bear the burden of proof.  *See Bruesewitz v. Wyeth
LLC*, 562 U.S. 223, 251 n.2 (2011).

"Express preemption occurs when Congress enacts a statute that expressly
commands that state law on the particular subject is displaced."  *Gadda v. Ashcroft*, 377
F.3d 934, 944 (9th Cir. 2004).  The Energy Policy and Conservation Act (the "EPCA")
contains a preemption clause that establishes that "no State regulation concerning the
energy efficiency, energy use, or water use of such covered product shall be effective with
respect to such product," unless the regulation meets one of several categories that are
not relevant to the instant actions.  42 U.S.C. § 6297(c).  Energy use "means the quantity
of energy directly consumed by a consumer product at point of use."  42 U.S.C.
§ 6291(4).

The EPCA contains "broad preemption provisions."  *California Rest. Ass'n v. City
of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024).  Still, "the breadth of EPCA's
preemption provision 'does not mean the sky is the limit.'"  *Id.* at 1103 (citation omitted).
A court "must draw a line between laws that are significantly related to [the preempted
subject], even indirectly, and thus are preempted, and those that have only a tenuous,
remote, or peripheral connection to [the preempted subject], and thus are not
preempted."  *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014) (citation
omitted).

### 2.    Application

After considering the relevant facts and the applicable law, the Court concludes
that Defendants have not shown that Plaintiffs' claims are preempted by the EPCA.

Plaintiffs allege that Defendants failed to include "warning labels suggest[ing] that the gas stoves regularly emit pollutants that are harmful to human health."[51] Plaintiffs contend that they "are not arguing that [Defendants'] products should never have been sold—just that Defendants should have disclosed the risks."[52] Plaintiffs assert that they "overpaid" for Defendants' products.[53] The Court concludes that those allegations do not concern energy use as defined under the EPCA.

As Plaintiffs contend—and the Court agrees—Defendants' reliance on *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), is misplaced.[54] That Ninth Circuit case concerned an ordinance prohibiting the installation of natural gas piping in new buildings, but the instant cases concern Plaintiffs' alleged overpayment for defective gas stoves.

Defendants correctly point out that UCL, FAL, and CLRA claims can be preempted by federal law. *See, e.g.*, *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020) (concluding that the plaintiffs' claim that the defendant "made an improper health claim due to added sugar levels" was preempted by federal law); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1090 (N.D. Cal. 2011) (concluding that the plaintiff's UCL and CLRA claims were preempted by the Medicare Act). Notwithstanding those authorities, the Court concludes that Plaintiffs' claims are not preempted by the EPCA, because Plaintiffs' allegations do not concern the EPCA and the effect that Plaintiffs' claims would have on energy use, if any, is merely tangential and remote.

As "one example" of a reasonable and safer alternative design that is available to Defendants, Plaintiffs allege that a "jet-powered infrared gas-range burner" consumes "about 40% less natural gas."[55] Defendants assert that, "at their core, [Plaintiffs' claims] would result in the regulation and reduction of natural gas levels generated by gas appliances in homes."[56] The Court is not persuaded. Plaintiffs expressly state that that stove is simply "one example"—and, therefore, not the only example—of a reasonable

---

[51]    *Hedrick* Amended Complaint ¶ 33; *Goldstein* Amended Complaint ¶ 34; *Norris* Amended Complaint ¶ 34.

[52]    *Norris* Opposition 20:6-7.

[53]    *Hedrick* Amended Complaint ¶ 87; *Goldstein* Amended Complaint ¶ 52; *Norris* Amended Complaint ¶ 58.

[54]    *See Goldstein* Opposition 16:2-6.

[55]    *Hedrick* Amended Complaint ¶ 30; *Goldstein* Amended Complaint ¶ 31; *Norris* Amended Complaint ¶ 31.

[56]    *Hedrick* Motion 21:2-4; *Goldstein* Motion 22:24-23:1; *Norris* Motion 23:9-11.

and safer alternative design.[57]  Throughout their Amended Complaints, Plaintiffs allege that Defendants should have included a warning.  As Plaintiffs note, "a gas stove with a warning burns the same amount of gas as one without a warning."[58]

The Court agrees with the *Drake* court's preemption analysis—that Haier failed to show that Drake's claims are preempted by the EPCA when "there are not enough facts available at the pleading stage to demonstrate that the relief requested would have any impact on the quantity of natural gas consumed at the point of use."  *Drake*, 2024 WL 590597, at \*6.  If additional facts come to light that suggest that Plaintiffs' claims may be preempted by the EPCA, then Defendants may raise this issue again.

Accordingly, the Motions are **DENIED** with respect to Defendants' preemption argument.

## C.    Implied Warranty Claims

Plaintiffs assert two implied warranty claims—one pursuant to the SBA and the other pursuant to the Uniform Commercial Code (the "UCC").[59]  The UCC implied warranty elements also apply to SBA claims.  *See Kanan v. Thinx Inc.*, 2021 WL 4464200, at \*7 (C.D. Cal. June 23, 2021).  Defendants move to dismiss both claims.[60]

### 1.    Statute of Limitations

In the *Hedrick* Motion, BSH moves to dismiss Hedrick's claims as time-barred.[61]

### a.    Applicable Law

"A statute of limitations creates an affirmative defense."  *Stiles v. Walmart, Inc.*, 639 F. Supp. 3d 1029, 1062 (E.D. Cal. 2022), *reconsideration denied*, 2023 WL 1110438 (E.D. Cal. Jan. 30, 2023).  SBA and UCC claims are subject to a four-year statute of limitations, which run from the date of delivery.  *See* Cal. Com. Code § 2725; *Matray v. Ford Motor Co.*, 2011 WL 13221015, at \*2 (C.D. Cal. Nov. 9, 2011).  However, "equitable tolling doctrines still apply."  *Clenney v. FCA US LLC*, 2022 WL 2197074, at \*1 (N.D. Cal. June 20, 2022).  The statute of limitations may be tolled under the discovery rule,

---

[57]    *Hedrick* Amended Complaint ¶ 30; *Goldstein* Amended Complaint ¶ 31; *Norris* Amended Complaint ¶ 31.

[58]    *Norris* Opposition 19:15-16.

[59]    *Hedrick* Amended Complaint ¶¶ 109-121 & 144-160; *Goldstein* Amended Complaint ¶¶ 107-119 & 127-43; *Norris* Amended Complaint ¶¶ 112-23 & 131-39.

[60]    *Hedrick* Motion 23:16-26:28; *Goldstein* Motion 24:2-20; *Norris* Motion 32:12-34:25.

[61]    *Hedrick* Motion 24:15-25:2.

which "postpones accrual of a cause of action until the plaintiff discovers, or has reason
to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).

### b.    Application

Here, Hedrick purchased his gas stove in August or September 2017, but Hedrick
did not commence this action until March 2023.[62]  Hedrick contends that he "did not
discover the truth until fall of 2022, when he saw news reports of the risks of harmful
pollutants from gas stoves[.]"[63]  The Court concludes that Hedrick has alleged sufficient
facts to show that the discovery rule applies.  Accordingly, the *Hedrick* Motion is
**DENIED** with respect to BSH's statute-of-limitations argument.

### 2.    Merchantability

Defendants assert that Plaintiffs fail to allege that Defendants' gas stoves were
unmerchantable at the time of sale.[64]

### a.    Applicable Law

The implied warranty of merchantability "provides for a minimum level of
quality."  *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1296 (1995), *as
modified on denial of reh'g* (Sept. 21, 1995) (citation omitted).  Merchantability is shown if
the product is in safe condition and substantially free of defects.  *See Mexia v. Rinker Boat
Co.*, 174 Cal. App. 4th 1297, 1303 (2009); *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th
402, 406 (2003) ("[A] breach of the implied warranty of merchantability means the
product did not possess even the most basic degree of fitness for ordinary use.").

### b.    Application

Plaintiffs use their gas stoves for common culinary tasks, such as cooking eggs,
baking, and boiling water.[65]  But Plaintiffs also allege that their gas stoves are defective
because some studies show that Defendants' products emit unsafe levels of pollutants
when those products are used for their ordinary purpose.[66]

---

[62]    *Hedrick* Amended Complaint ¶ 44.

[63]    *Id.* at ¶ 49.

[64]    *Hedrick* Motion 25:5-26:4; *Goldstein* Motion 24:2-20; *Norris* Motion 32:17-33:11.

[65]    *Hedrick* Amended Complaint ¶ 48; *Goldstein* Amended Complaint ¶ 49; *Norris* Amended
Complaint ¶ 54.

[66]    *Hedrick* Amended Complaint ¶¶ 16-22; *Goldstein* Amended Complaint ¶¶ 15-23; *Norris*
Amended Complaint ¶¶ 16-22.

The Court concludes that Plaintiffs have sufficiently alleged that Defendants' gas stoves were unmerchantable at time of sale. Although Plaintiffs aver that the gas stoves that they purchased were able to cook food, Plaintiffs also allege that those gas stoves are defective because they emit unsafe levels of pollutants. The Court concludes that those non-conclusory allegations are sufficient to sustain Plaintiff's implied warranty claims. *See Mexia*, 174 Cal. App. 4th at 1303; *see also Drake*, 2024 WL 590597, at *8 (N.D. Cal. Feb. 13, 2024) ("By alleging a material safety-related defect, Drake has adequately pleaded that his gas stove was unfit for ordinary use.").

Defendants assert that those studies "are inconclusive as to a causal connection between the claimed emissions and the health effects alleged, and inconsistent as to whether any association even exists between the two."[67] During the hearing, Defendants reiterated their argument that the underlying studies do not support Plaintiffs' allegations that the ordinary use of gas stoves is dangerous. Defendants' contentions may be persuasive later in these cases, such as in connection with a *Daubert* or summary judgment motion. However, at this early stage in these actions, Plaintiffs have pleaded enough facts to make the plausible allegation that Defendants' gas stoves were unmerchantable at the time of delivery. Accordingly, the Motions are **DENIED** with respect to Defendants' merchantability argument.

### 3.    Privity

In the *Hedrick* Motion and the *Norris* Motion, BSH and Samsung assert that Plaintiffs are barred from pursuing their implied warranty claims because they lack privity with Defendants.[68]

### a.    Applicable Law

The Ninth Circuit has concluded that a lack of vertical privity requires the dismissal of implied warranty claims. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). In *Clemens*, the Ninth Circuit did not explicitly recognize "the existence of an exception to the privity requirement for third-party beneficiaries." *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1011 (N.D. Cal. 2023). "District courts in California are split on a third-party beneficiary exception to privity in the consumer warranty context." *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 914 (E.D. Cal. 2018) (collecting cases). "However, California appellate courts have long recognized the third-party beneficiary exception for implied warranty claims." *Natera*

---

[67]    Defendants' Supplemental Brief 14:1-3.

[68]    *Hedrick* Motion 26:6-28; *Norris* Motion 33:13-24.

*Prenatal Testing Litig.*, 664 F. Supp. 3d at 1011 (citing *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978)).

Under Illinois law, the third-party beneficiary exception "applies where the manufacturer knew the identity, purpose and requirements of the customer and manufactured or delivered the goods specifically to meet those requirements[.]" *Redmon v. Whirlpool Corp.*, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020) (internal quotation marks and citation omitted).

### b.    Application

Here, Plaintiffs allege that they were "foreseeable third-party beneficiaries" because BSH and Samsung sell the "Products to retailers for distribution and sale to consumers[.]"[69] Plaintiffs further assert that BSH and Samsung sell their products "specifically for home use, and market[] to consumers for home use."[70]

As an initial matter, the Court recognizes the third-party beneficiary exception to the vertical privity requirement of implied warranty claims. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) (concluding that the plaintiffs alleged that they are third-party beneficiaries and noting that "*Clemens* is not at odds with [the court's] decision").

Plaintiffs have sufficiently alleged that they are third-party beneficiaries. BSH asserts that Plaintiffs' claims are conclusory.[71] But the Court concludes that Plaintiffs' allegations—suggesting that BSH and Samsung specifically marketed and sold their products to consumers like Plaintiffs—are sufficient at the pleading stage. Accordingly, the *Hedrick* Motion and the *Norris* Motion are **DENIED** with respect to Defendants' privity argument.

### 4.    Disclaimer

BSH and Samsung assert that that they disclaimed any UCC implied warranties.[72]

### a.    Applicable Law

Under California and Illinois law, the UCC permits disclaimers, as long as those disclaimers are conspicuous. *See Clark v. LG Elecs. U.S.A., Inc.*, 2013 WL 5816410, at *12

---

[69]    *Hedrick* Amended Complaint ¶ 151; *Norris* Amended Complaint ¶ 138.

[70]    *Hedrick* Amended Complaint ¶ 15; *Norris* Amended Complaint ¶ 15.

[71]    *Hedrick* Reply 12:20-21.

[72]    *Hedrick* Motion 23:16-24:12; *Norris* Motion 33:26-34:25.

(S.D. Cal. Oct. 29, 2013); *Harbor Pipe & Steel, Inc. v. Mazak Optonics Corp.*, 2023 WL
8090170, at *5 (N.D. Ill. Nov. 21, 2023); *see also Hirsch v. BHS Home Appliances Corp.*,
2022 WL 4596692, at *5 (C.D. Cal. July 21, 2022) (concluding that a disclaimer is "not
conspicuous" when the "language is buried in the middle of a 75-page long user manual"
and the text is "not bolded" and is "not set-off by an independent header, or other
contrasting feature, that would draw the reader's attention to the disclaimer").

### b.    Application

BSH asserts that its user guide includes an express warranty in capitalized text that
provides, in relevant part, as follows:

> THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES,
> WHETHER EXPRESS OR IMPLIED.[73]

Similarly, Samsung provides a one-year express warranty, which includes a subheading in
bold, all-capitalized text titled "**EXCLUSION OF IMPLIED WARRANTIES**" and
states, in all-capitalized text:

> IMPLIED       WARRANTIES,    INCLUDING    THE    IMPLIED
> WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A
> PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR.[74]

Hedrick and Kalergis assert that the BSH disclaimer is not conspicuous because it
is buried in the middle of a 72-page long user manual; not bolded; located at the very end
of the manual's two-page long description of the express warranty that BSH provides to
its customers; and not set-off by an independent header or otherwise contrasting feature
that would draw the reader's attention to the disclaimer.[75]  Norris and Stone similarly
contend that Samsung's disclaimer is not conspicuous because it is hidden in the middle
of a 150-page long user manual; not bolded; and at the very end of the manual's two-page
long description of the express warranty that Samsung provides to its consumers.[76]

Based upon the relevant facts and the applicable law, the Court concludes that the
disclaimers are not effective to disclaim the implied warranties at issue.  *See Hirsch*, 2022
WL 4596692, at *5.  Accordingly, the *Hedrick* and *Norris* Motions are **DENIED** with
respect to Defendants' disclaimer argument.

---

[73]    *Hedrick* Motion 23:25-24:3 (citing *Hedrick* Amended Complaint, Ex. 1 [ECF No. 36-1]).

[74]    *Norris* Motion 34:5-11.

[75]    *Hedrick* Opposition 17:1-5.

[76]    *Norris* Opposition 32:3-7.

### D.    Fraud Claims

In this section, the Court addresses Plaintiffs' UCL claims (based upon a fraud theory); FAL claims; CLRA claims; ICFA claim; violations of State Consumer Protection Statutes claims; and fraudulent omission claims.  The Court agrees with Defendants' assertions that those claims are predicated on the notion of fraud and that they are therefore subject to the pleading standard set forth in Rule 9(b).[77]  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (the Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL"); *Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (concluding that the particularity requirement in Rule 9(b) applies to the plaintiffs' UCL, FAL, and CLRA claims because those claims are based upon the defendants' allegedly fraudulent course of conduct); *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022) ("When the ICFA claim is based on fraud, it must satisfy the heightened Rule 9(b) pleading standard and identify the who, what, where, and how of the fraud.").

#### 1.    Affirmative Misrepresentation

Defendants assert that Plaintiffs fail to identify with particularity any misrepresentation by Defendants concerning Defendants' gas stoves.[78]

##### a.    Applicable Law

"[W]hen it comes to affirmative misrepresentations—the complaint must allege the 'who, what, when, where, and how of the misconduct charged' and explain 'what is false or misleading about a statement, and why it is false.'" *Epperson v. Gen. Motors, LLC*, 2023 WL 8628327, at *2 (S.D. Cal. Dec. 13, 2023) (citing *Ebeid* ex rel. *U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).  The "mere sale" of the product is insufficient to support a fraudulent misrepresentation claim.  *See Gutierrez v. Johnson & Johnson Consumer Inc.*, 2021 WL 822721, at *7 (S.D. Cal. Jan. 22, 2021).  Generalized allegations that fail to identify the purportedly fraudulent statement, and why it is false, fail to plead affirmative misrepresentation with particularity.  *See Hernandez v. Nissan N. Am., Inc.*, 2023 WL 3806377, at *4 (C.D. Cal. Mar. 29, 2023).

##### b.    Application

The Court concludes that Plaintiffs' allegations regarding affirmative misrepresentations are insufficient to meet the pleading standard set forth in Rule 9(b).  Plaintiffs allege that Defendants affirmatively represented that their products are safe and

---

[77]    *Hedrick* Motion 32:3-8; *Goldstein* Motion 25:12-14; *Norris* Motion 24:24-25-9.

[78]    *Norris* Motion 25:11-26:12; *Hedrick* Motion 29:24-25; *Goldstein* Motion 25:22-23.

fit for ordinary home cooking because the products were marketed for the "home."[79]
The Court agrees with Defendants' assertions that those allegations "fail to identify the
content of any actionable statement."[80]  Although Plaintiffs have generally alleged that
they were misled into believing that Defendants' gas stoves were safe, Plaintiffs have
failed to plead this claim with the required particularity.  Accordingly, the Motions are
**GRANTED** with respect to Defendants' affirmative misrepresentation argument, and
those claims are **DISMISSED with leave to amend**.

### 2.    FAL Misrepresentation Claim

Defendants move to dismiss Plaintiffs' FAL claims because those claims are based
upon Defendants' alleged omissions, not any affirmative statements.[81]

#### a.    Applicable Law

The FAL prohibits making or disseminating an untrue or misleading statement.
*See* Cal. Bus. & Prof. Code § 17500.  "Courts reject FAL claims premised solely on a
defendant's omissions, but a plaintiff may base a FAL claim on an affirmative statement
that is misleading in light of the information omitted."  *In re Vizio, Inc., Consumer Priv.
Litig.*, 238 F. Supp. 3d 1204, 1231 (C.D. Cal. 2017) (collecting cases).

#### b.    Application

Plaintiffs have failed to allege affirmative statements.  Thus, the Court agrees with
Defendants' assertion that Plaintiffs' FAL claims are purely based upon an alleged
omission.  Because "[t]here can be no FAL claim where there is no 'statement' at all[,]"
the Court **GRANTS** the Motions with respect to Defendants' FAL misrepresentation
argument, and the Court **DISMISSES** those claims **with leave to amend**.  *See Norcia v.
Samsung Telecommunications Am., LLC*, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20,
2015) (citation omitted).

### 3.    Fraudulent Omission

A "fraud by omission claim can succeed without the same level of specificity
required by a normal fraud claim."  *See, e.g., Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d

---

[79]    *Hedrick* Amended Complaint ¶ 15; *Goldstein* Amended Complaint ¶ 14; *Norris* Amended
Complaint ¶ 15.

[80]    *Norris* Reply 12:13-14; *Hedrick* Motion 29:4-5.

[81]    *Hedrick* Motion 29:24-30:9; *Goldstein* Motion 32:6-17; *Norris* Motion 31:3-14.

1088, 1099 (N.D. Cal. 2007).  The Court addresses Defendants' contentions regarding
Plaintiffs' fraudulent omission claims in turn.

### a.    Existence of a Defect

Defendants assert that Plaintiffs fail to allege the existence of a defect.[82]  The
Court is unpersuaded.  Plaintiffs aver that Defendants' products have "a defective design
that carries significant (and undisclosed) air pollution risks."[83]  Plaintiffs further allege
that Defendants' products "'emit air pollutants such as nitrogen dioxide, carbon
monoxide and fine particulate matter at levels the EPA and World Health Organization
have said are unsafe and linked to respiratory illness, cardiovascular problems, cancer,
and other health conditions.'"[84]  Plaintiffs also plead that all of Defendants' products
"emit gases this way when they are used for cooking[.]"[85]  Plaintiffs sufficiently allege the
existence of a design defect, with sufficient particularity at the pleading stage.
Accordingly, the Motions are **DENIED** with respect to this issue.

### b.    Defendants' Knowledge of a Defect

Defendants assert that Plaintiffs' fraudulent omission claims fail to allege with
particularity Defendants' knowledge of any alleged defect.[86]

### i.    Applicable Law

Plaintiffs must allege Defendants' knowledge of a defect.  *See Wilson v. Hewlett-
Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).  While "circumstances constituting
fraud must be alleged with particularity, knowledge may be alleged generally."  *McCarthy
v. Toyota Motor Corp.*, 2019 WL 3220579, at *4 (C.D. Cal. Apr. 9, 2019) (internal
quotation marks and citation omitted).  Still, a plaintiff "'must sufficiently allege that a
defendant was aware of a defect at the time of sale to survive a motion to dismiss,' not
that a defendant could or should have been aware of the defect."  *Wilson v. Hyundai
Motor Am.*, 2023 WL 3025376, at *7 (C.D. Cal. Mar. 14, 2023) (citing *Wilson*, 668 F.3d at
1145)).  Vague and sweeping statements about industry research are insufficient to allege

---

[82]    *Hedrick* Motion 34:16-35:1; *Norris* Motion 26:5-17.

[83]    *Hedrick* Amended Complaint ¶ 43; *Goldstein* Amended Complaint ¶ 45; *Norris* Amended
Complaint ¶ 46.

[84]    *Hedrick* Amended Complaint ¶ 16; *Goldstein* Amended Complaint ¶ 15; *Norris* Amended
Complaint ¶ 16.

[85]    *Hedrick* Amended Complaint ¶ 17; *Goldstein* Amended Complaint ¶ 19; *Norris* Amended
Complaint ¶ 17.

[86]    *Hedrick* Motion 35:2-36:1; *Goldstein* Motion 26:5-29:5; *Norris* 26:20-27:13.

knowledge. *See Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at \*3 (N.D. Cal.
Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020).

### ii.    Application

As Defendants assert, and the Court agrees, the bulk of Plaintiffs' allegations are
focused on industry research, much of which came to light after Plaintiffs purchased
Defendants' gas stoves.[87]

Plaintiffs allege that Defendants are constituents of the natural gas industry; that
since the 1980s, the natural gas industry has worried that the US Consumer Product
Safety Commission would regulate gas cooking emissions due to indoor air quality
concerns; that Defendants monitor and keep track of research on the health effects of
their products; and that Defendants are aware that their products emit health-harming
pollutants.[88]  Because the instant cases are only at the pleading stage, Plaintiffs cannot be
expected to have personal knowledge of all of the relevant facts, *see Neubronner v. Milken*,
6 F.3d 666, 672 (9th Cir. 1993), and Plaintiffs may allege knowledge generally.  Here,
Plaintiffs have alleged enough facts to support these claims.  Accordingly, Defendants'
Motions are **DENIED** with respect to this issue.

### c.    Defendants' Duty to Disclose

Defendants assert that Plaintiffs fail to allege a duty to disclose.[89]

### i.    Applicable California Law

A fraudulent omission claim must allege the omission of a fact that the defendant
was obliged to disclose.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)
(citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)).  "California
law on a party's duty to disclose in the context of omissions claims brought under
California consumer protection laws is unsettled." *Neu v. FCA US LLC*, 2023 WL
10406710, at \*7 (C.D. Cal. Nov. 13, 2023).  "Under one approach, a defendant has a duty
to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or
(2) the defect is material, 'central to the product's function,' and the plaintiff alleges one
of the four *LiMandri* factors." *McKinney v. Corsair Gaming, Inc.*, 2022 WL 2820097, at
\*9 (N.D. Cal. July 19, 2022) (referring to *LiMandri v. Judkins*, 52 Cal. App. 4th 326

---

[87]    *Hedrick* Amended Complaint ¶¶ 16-22; *Goldstein* Amended Complaint ¶¶ 15-22; *Norris*
Amended Complaint ¶¶ 16-22.

[88]    *Hedrick* Amended Complaint ¶¶ 23, 24, & 28; *Goldstein* Amended Complaint ¶¶ 24, 25,
& 29; *Norris* Amended Complaint ¶¶ 23, 24, & 28.

[89]    *Hedrick* Motion 27:19-29:21; *Goldstein* Motion 29:7-31:18; *Norris* Motion 27:15-29:11.

(1997)).  The *LiMandri* factors are as follows:  (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; and (4) the defendant makes partial representations, but also suppresses some material facts.  *See LiMandri*, 52 Cal. App. 4th at 336.  "Under a separate approach, a defendant has a duty to disclose when the plaintiff alleges either:  (1) the defect relates to an unreasonable safety hazard; (2) the defect is material and related to the product's central function; or (3) the presence of one of the four *LiMandri* factors."  *McKinney*, 2022 WL 2820097, at *9 (emphasis omitted).

## ii.    Application under California Law

Applying the first approach, the Court concludes that Plaintiffs have sufficiently alleged Defendants' duty to disclose.

Plaintiffs aver that Defendants' gas stoves are defective because they carry significant and undisclosed air pollution risks.[90]  In view of those assertions, as well as similar allegations set forth in the Amended Complaints, Plaintiffs have sufficiently pleaded that the defect at issue relates to an unreasonable safety hazard.  Alternatively, the Court concludes that the alleged defect is central to Defendants' products' function.  As Plaintiffs contend, and the Court agrees, "the defect is related to the central function of [Defendants' gas stoves]—cooking—because it prevents that central function from being carried out safely."[91]

Plaintiffs have sufficiently alleged Defendants' exclusive knowledge.  District courts "do not apply 'exclusivity' with such rigidity.  Rather, exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge of the defect." *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012); *see also Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1170 (C.D. Cal. 2023) (internal quotation marks and citation omitted) (noting that, "in general, courts have not defined exclusive literally, but have found such claims cognizable if the defendant has superior knowledge of a defect that was not readily apparent and there is no or only . . . limited publicly available information about the defect").

Here, Plaintiffs allege that Defendants monitor and keep track of research on the health effects of their products.[92]  Plaintiffs have sufficiently pleaded knowledge, and

---

[90]    *Hedrick* Amended Complaint ¶ 43; *Goldstein* Amended Complaint ¶ 45; *Norris* Amended Complaint ¶ 46.

[91]    *Hedrick* Opposition 22:4-6; *Goldstein* Opposition 26:7-9; *Norris* Opposition 24:21-23.

[92]    *Hedrick* Amended Complaint ¶ 28; *Goldstein* Amended Complaint ¶ 29; *Norris* Amended Complaint ¶ 28.

Plaintiffs cannot be expected to have personal knowledge of all of the relevant facts. Because exclusivity need not be defined literally, Plaintiffs have sufficiently alleged this *LiMandri* factor. Based upon that conclusion, the Court declines to address the parties' additional arguments regarding the other *LiMandri* factors. Accordingly, the Motions are **DENIED** with respect to Defendants' fraudulent omission argument under California law.

### iii.   Applicable Illinois Law

"In Illinois, a duty to disclose can arise where (1) the plaintiff and defendant are in a fiduciary or confidential relationship; or (2) where the plaintiff places trust and confidence in the defendant, thereby placing the defendant in a position of influence and superiority over the plaintiff." *Rodriguez*, 596 F. Supp. 3d at 1058. A duty to disclose can arise where the defendant fails to disclose material facts, which renders the partial statement misleading. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009).

### iv.   Application under Illinois Law

Kalergis has failed to allege a duty to disclose under Illinois law. As BSH contends, and the Court agrees, Kalergis fails to address the special relationship requirement.[93] Kalergis's allegations regarding a partial representation are too vague and conclusory to state a claim. Accordingly, the *Hedrick* Motion is **GRANTED** with respect to Kalergis's fraudulent omission claim under Illinois law, which claim is **DISMISSED with leave to amend**.

### d.   Reliance

Defendants argue that Plaintiffs fail to plead reliance with the requisite particularity.[94]

### i.   Applicable Law

An essential element of a fraudulent omission claim is the plaintiff's actual reliance. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1017 (N.D. Cal. 2020). A plaintiff need not prove that the omission was the only cause or even the predominant cause, but merely that it was a substantial factor in his or her purchasing decision. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been

---

[93]   *Hedrick* Reply 15:7-8.

[94]   *Hedrick* Motion 33:8-34:13; *Goldstein* Motion 25:11-26:3; *Norris* Motion 29:13-30:10.

aware of it and behaved differently." *Id.* (internal quotation marks and citation omitted).
When the alleged omission is plausibly material, it is "presumed, or at least inferred" that
a plaintiff would have behaved differently. *Anderson*, 500 F. Supp. 3d at 1017–18.

### ii.    Application

Plaintiffs have sufficiently alleged reliance. Plaintiffs have shown that Defendants'
alleged omissions were material because those omissions concern "significant (and
undisclosed) air pollution risks."[95] Thus, Plaintiffs' reliance on Defendants' omission of
those risks can be inferred from the allegations set forth in the Amended Complaints.
Plaintiffs also allege with sufficient particularity that they relied on the representations in
the marketing materials and the list of features.[96] Accordingly, the Motions are **DENIED**
with respect to Defendants' reliance argument.

### e.    Economic Loss Rule

Defendants assert that the economic loss rule bars Plaintiffs' fraudulent omission
claims.[97] A "plaintiff cannot assert tort claims based on a product not performing as
promised—that is simply an economic loss recoverable in a contract-based action." *In re
Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 848
(C.D. Cal. 2020). Plaintiffs' affirmative misrepresentation claims are deficient.
Therefore, the issue presented in Defendants' Motions is whether the economic loss rule
bars Plaintiffs' fraudulent omission claims. The Ninth Circuit recently certified this exact
issue to the California Supreme Court. *See Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188,
1193 (9th Cir. 2021). If the California Supreme Court reaches a different conclusion
regarding the applicability of the economic loss rule, then Defendants may make an
appropriate motion. At present, the Motions are **DENIED without prejudice** with
respect to Defendants' economic-loss-rule argument.

### f.    Governing State Law

Samsung asserts that Plaintiffs fail to allege which state law governs their
fraudulent omission claims.[98] But the Court agrees with Plaintiffs' argument that,
because their Amended Complaints expressly allege where each Plaintiff resides and
where each Plaintiff purchased his or her gas stove, Plaintiffs have sufficiently shown

---

[95]    *Hedrick* Amended Complaint ¶ 43; *Goldstein* Amended Complaint ¶ 45; *Norris* Amended
Complaint ¶ 46.

[96]    *Hedrick* Amended Complaint ¶ 83; *Goldstein* Amended Complaint ¶ 47; *Norris* Amended
Complaint ¶¶ 50 & 53.

[97]    *Hedrick* Motion 27:4-18; *Goldstein* Motion 31:20-32:4; *Norris* Motion 30:13-19.

[98]    *Norris* Motion 30:22-28.

which law applies to each claim.  Accordingly, the *Norris* Motion is **DENIED** with
respect to this issue.

### 4.    UCL Claims:  Unfair and Unlawful Prongs

Plaintiffs assert their UCL claims under the unlawful, fraudulent, and unfair
prongs.[99]  Defendants contend that Plaintiffs' "failure" to allege that Defendants "acted
fraudulently" is "fatal" to both the unfair and unlawful prong claims.[100]  Because
Plaintiffs' have sufficiently stated a claim with respect to at least some of Plaintiffs'
statutory claims, the Court **DENIES** these Motions with respect to those issues.

### 5.    ICFA Claim

BSH asserts that Kalergis fails to plead his ICFA claim.[101]

#### a.    Applicable Law

A plaintiff "may assert claims under ICFA based on either deceptive conduct or
unfair conduct (or both)."  *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609,
628 (N.D. Ill. 2019).  A plaintiff must show "(1) a deceptive or unfair act or promise by
the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair
practice; and (3) that the unfair or deceptive practice occurred during a course of conduct
involving trade or commerce."  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th
Cir. 2012).  A plaintiff cannot maintain an ICFA claim "when the plaintiff does not
receive, directly or indirectly, communication or advertising from the defendant."  *De
Bouse v. Bayer*, 235 Ill. 2d 544, 555 (2009).

#### b.    Application

Here, Kalergis has not identified a communication that he received from BSH,
and, therefore, Kalergis has not sufficiently pleaded his ICFA claim.  In the Opposition,
Kalergis asserts that BSH's alleged deceptive practices may be recast to show unfair
conduct under the ICFA.[102]  But that allegation is not pleaded with particularity in the
Amended Complaint.  Accordingly, the *Hedrick* Motion is **GRANTED** with respect to
Kalergis's ICFA claim, and that claim is **DISMISSED with leave to amend**.

---

[99]    *Hedrick* Amended Complaint ¶¶ 76-82; *Goldstein* Amended Complaint ¶¶ 74-80; *Norris*
Amended Complaint ¶¶ 79-85.

[100]    *Hedrick* Motion 36:3-37:2; *Goldstein* Motion 32:21-24; *Norris* Motion 31:16-32:10.

[101]    *Hedrick* Motion 37:4-38:21.

[102]    *Hedrick* Opposition 30:13-28.

### 6.   Unjust Enrichment

Defendants argue that Plaintiffs fail to assert unjust enrichment claims.[103]  The
Court is unpersuaded.  Defendants contend that their express warranty precludes
Plaintiffs' unjust enrichment claims.  However, an "actual contract covering a subject"
forecloses unjust enrichment recovery "regarding that subject[.]"  *Hedging Concepts, Inc.
v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996), *as modified on denial of reh'g*
(1996); *see also Hollywood Casino-Aurora, Inc. v. Aurora Metro. Exposition Auditorium*, 2013
IL App (2d) 120737-U, ¶ 34 (unpublished).  The Court agrees with Plaintiffs' assertions
that the written warranties do not cover the subject of this dispute.[104]  Further,
Defendants contend that Plaintiffs' unjust enrichment claims fail because they are
predicated on the same theory as Plaintiffs' fraud-based claims.[105]  Because Plaintiffs
plead at least some of their fraud-based claims with sufficient particularity, the Court
**DENIES** the Motions with respect to Defendants' unjust enrichment argument.

### 7.   Injunctive Relief

Defendants assert that Plaintiffs lack standing for injunctive relief.[106]

#### a.   Applicable Law

"A plaintiff must demonstrate constitutional standing separately for each form of
relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).
To obtain injunctive relief, the plaintiff must demonstrate that he has suffered or is
threatened with a concrete and particularized legal harm, coupled with a sufficient
likelihood that he will again be wronged in a similar way.  *See Bates v. United Parcel Serv.,
Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  The plaintiff must show a "real and immediate
threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

#### b.   Application

Plaintiffs have failed to show that they have standing to obtain injunctive relief.
Plaintiffs' conclusory allegations in their Amended Complaints do not plausibly suggest a
real and immediate threat of repeat injury.  Accordingly, the Motions are **GRANTED**
with respect to Defendants' injunctive relief argument.  To the extent that Plaintiffs seek

---

[103]   *Hedrick* Motion 30:11-31:28; *Goldstein* Motion 33:21-34:2; *Norris* Motion 34:27-35:24.

[104]   *Hedrick* Opposition 25:2-4; *Goldstein* Opposition 32:19-21; *Norris* Opposition 32:19-21.

[105]   *Goldstein* Motion 33:24-34:2; *Norris* Motion 35:8-10.

[106]   *Hedrick* Motion 38:24-40:14; *Goldstein* Motion 33:4-19; *Norris* Motion 20:20-21:16.

injunctive relief through their instant claims, those claims are **DISMISSED with leave to amend**.

### 8.    Punitive Damages

BSH asserts that Plaintiffs' plea for punitive damages is inadequate.[107]  The Court agrees.

In California, punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3924(a).  Under the ICFA, punitive damages may be awarded when plaintiffs adequately allege gross fraud, malice, or willfulness.  *See In re Ventra Card Litig.*, 2015 WL 1843033, at *6 (N.D. Ill. Apr. 1, 2015).

Here, Plaintiffs have failed to plead facts sufficient to establish their entitlement to punitive damages.  Accordingly, the Court **STRIKES** Plaintiffs' prayer for punitive damages **with leave to amend**.


## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     The *Hedrick* Motion [ECF No. 38 in the *Hedrick* Case], the *Goldstein* Motion [ECF No. 31 in the *Goldstein* Case], and the *Norris* Motion [ECF No. 34 in the *Norris* Case] are each **GRANTED in part** and **DENIED in part**.

2.     Specifically, the instant Motions are **GRANTED** with respect to the following claims of Plaintiffs, all of which claims are **DISMISSED with leave to amend**.

> a.     Affirmative Misrepresentation claims;
>
> b.     FAL Misrepresentation claims;
>
> c.     Fraudulent Omission claim under Illinois law, concerning BSH's duty to disclose;
>
> d.     ICFA claim; and
>
> e.     Injunctive Relief.

---

[107]    *Hedrick* Motion 40:16-41:20.

3.      The prayer for punitive damages in the *Hedrick* Amended Complaint is **STRICKEN with leave to amend**.

4.      The instant Motions are **DENIED** with respect to all other issues and arguments.

5.      Plaintiffs are **DIRECTED** to file amended pleadings, if at all, no later than May 31, 2024.  If Plaintiffs choose to file amended pleadings, then they are also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to First/Second Amended Complaint that provides the Court with a redline version that shows the amendments.  If Plaintiffs fail to file their amended pleadings by May 31, 2024, then the Court will **DISMISS** Plaintiff's respective claims for relief **with prejudice**.

6.      Defendants are **DIRECTED** to file their respective responses to Plaintiffs' operative pleadings no later than June 21, 2024.

**IT IS SO ORDERED.**

Dated:    May 14, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE