1  Emily T. Kuwahara (State Bar No. 252411)
     EKuwahara@crowell.com
2  CROWELL & MORING LLP
   515 South Flower Street
3  40th Floor
   Los Angeles, CA 90071
4  Telephone: 213.622.4750
   Facsimile: 213.622.2690
5
   Rebecca B. Chaney (admitted *pro hac vice*)
6    rchaney@crowell.com
   Scott Winkelman (admitted *pro hac vice*)
7    swinkelman@crowell.com
   Robbie Jost (admitted *pro hac vice*)
8    rjost@crowell.com
   1001 Pennsylvania Avenue, NW
9  Washington, D.C. 20004
   Telephone: 202.624.2500
10 Facsimile:  202.628.5116

11 Attorneys for Defendant
   BSH HOME APPLIANCES
12 CORPORATION

13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16
   ROBERT HEDRICK, NICHOLAS          Case No. 8:23-CV-000358 JWH (JDE)
17 KALERGIS, and IVAN ANTIC individually
   and on behalf of all others similarly situated,   **DEFENDANTS' NOTICE OF**
18                                    **COORDINATED MOTION AND**
                  Plaintiffs,         **COORDINATED MOTION TO**
19                                    **DISMISS AMENDED**
         v.                           **COMPLAINTS; MEMORANDUM**
20                                    **OF POINTS AND AUTHORITIES**
   BSH HOME APPLIANCES                **IN SUPPORT THEREOF**
21 CORPORATION,
                                      Date:      November 22, 2024
22                Defendant.          Time:      9:00 a.m.
                                      Place:     Courtroom 9D
23                                    Judge:     Hon. John W. Holcomb

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 22, 2024 at 9:00 a.m., or as soon thereafter as the matter may be heard by the Court, in Courtroom 9D, 9th Floor of the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Santa Ana, California 92701-4516, before the Honorable John W. Holcomb, Defendants BSH Home Appliances Corporation, Whirlpool Corporation, and Samsung Electronics America, Inc. (collectively, "Defendants") will and hereby do move this Court for an order dismissing Plaintiffs' claims asserted against Defendants in the operative amended complaints. This motion to dismiss is brought pursuant to Rule 12(b)(1) on the ground that Plaintiffs lack standing and pursuant to Rules 9(b) and 12(b)(6) on the ground that the amended complaints fail to state any claim upon which relief can be granted.

This motion is based on the following Memorandum of Points and Authorities, Declaration of Elie Salamon ("Salamon Decl.") filed contemporaneously with this motion, the Proposed Order, the arguments of counsel, and all other material that may properly come before the Court at or before the hearing on this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 28, July 10, 16, 19, 22, and 26, 2024.

Dated: August 23, 2024        Respectfully submitted,

CROWELL & MORING LLP

By:    */s/ Rebecca B. Chaney*
       Rebecca B. Chaney

*Attorneys for Defendant BSH Home Appliances Corporation*

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ....................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...................................14

STATEMENT OF FACTS ..............................................................................15

      A.    This Litigation and the Court's Prior Order ...............................15

      B.    Plaintiffs' Allegations ...............................................................17

ARGUMENT ....................................................................................................19

I.    Plaintiffs' Allegations That All Gas Ranges Are Unsafe Are Implausible ..............19

II.    Plaintiffs Lack Article III Standing ..................................................23

      A.    Plaintiffs Do Not Allege Any Cognizable Article III Injury .....................23

      B.    Plaintiffs Lack Standing to Seek Injunctive Relief ......................................28

II.    Plaintiffs' Claims Are Also Barred by the First Amendment ...................................30

      A.    The Warning Is Not Purely Factual Under *Zauderer* ...................................32

      B.    The Warning Is Not Uncontroversial Under *Zauderer* ...............................33

      C.    Any Warning About the Potential "Risks" Would Not Survive Intermediate Scrutiny Under *Central Hudson* ...............................33

III.    Plaintiffs' Failure-to-Warn Labeling Claims Are All Barred for Failure to Provide Pre-Suit Notice Under Proposition 65 ...........................................35

IV.    Plaintiffs' State-Law Claims Are Preempted ..................................................37

      A.    Plaintiffs' Claims Are Preempted Under 42 U.S.C. § 6297(c) ...................37

      B.    Plaintiffs' Labeling Claims Are Preempted Under 42 U.S.C. § 6297(a) .....40

V.    Plaintiffs Fail to Plausibly Allege Omission-Based Fraud Claims Under the UCL or CLRA or for Fraudulent Omission ...........................................42

      A.    Plaintiffs Fail to Allege Pre-Sale Knowledge of the Alleged Defect ..........42

      B.    Plaintiffs Fail to Allege a Duty to Disclose ...............................................44

C.     Plaintiffs Fail to Plausibly Allege Reliance on Any Omission .................. 45

D.     Plaintiffs' UCL "Unlawful" and "Unfairness" Claims Based on Omissions Cannot Stand ....................................................................................... 46

VI.   Plaintiffs' Implied Warranty Claims Fail ......................................................... 46

A.     Plaintiffs' Appliances Were Merchantable at the Time of Sale ................ 46

B.     The Express Written Warranty Bars the *Hedrick* and *Norris* Plaintiffs' Implied Warranty Claims ............................................................ 48

VII.  Plaintiffs Fail to Adequately Plead Their Unjust Enrichment Claims ................... 52

VIII. Plaintiffs' Punitive Damages Plea Remains Inadequate ......................................... 53

CONCLUSION ...................................................................................................... 53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Produce Co. v. FMC Corp.*,
  186 Cal. Rptr. 114 (Cal. Ct. App. 1982) ............................................................. 50

*Ahern v. Apple, Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................ 43

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*,
  410 F.3d 492 (9th Cir. 2005) ........................................................................ 41, 42

*Akers v. Costco Wholesale Corp.*,
  631 F. Supp. 3d 625 (S.D. Ill. 2022) ................................................................. 46

*Am. Suzuki Motor Corp. v. Superior Ct.*,
  44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) .................................................... 46, 47

*In re Apple Processor Litig.*,
  832 F. App'x 507 (9th Cir. 2020) .................................................................. 27, 28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. *passim*

*Boysen v. Walgreen Co.*,
  2012 WL 2953069 (N.D. Cal. July 19, 2012) ................................................ 24, 26

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011) ..................................................................................... 34

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015),
  *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ....................................... 23, 24, 28

*Cahen v. Toyota Motor Corp.*,
  717 F. App'x 720 (9th Cir. 2017) ................................................................... 28

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
    29 F.4th 468 (9th Cir. 2022) ................................................................. 33

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ............................................. 37, 40, 42

*Cent. Hudson Gas Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
    447 U.S. 557 (1980) ....................................................... 29, 31, 33

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................. 23

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.,*
    2017 WL 86033 (N.D. Cal. Jan. 10, 2017) .............................. 43

*CTIA - The Wireless Ass'n v. City of Berkeley,*
    928 F.3d 832 (9th Cir. 2019) ........................................... 33, 40

*Dalewitz v. Procter & Gamble Co.,*
    2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) ....................... 21, 22

*Dallah & Dallah v. State Farm Gen. Ins. Co.,*
    2022 WL 2784391 (C.D. Cal. Apr. 20, 2022) (Holcomb, J.) ......... 53

*Dang v. Samsung Elecs. Co.,*
    2018 WL 11348883 (N.D. Cal. July 2, 2018),
    *aff'd,* 803 F. App'x 137 (9th Cir. 2020) ...................... 49, 50, 51

*Daniel v. Ford Motor Co.,*
    806 F.3d 1217 (9th Cir. 2015) ............................................... 45

*Davidson v. Apple, Inc.,*
    2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ....................... 52

*DeFilippo v. Nat'l Broad. Co.,*
    446 A.2d 1036 (R.I. 1982) ................................................... 31

*Drake v. Haier U.S. Appliance Sols. Inc.,*
    2024 WL 2273192 (N.D. Cal. May 20, 2024) ....................... 36

*Drake v. Haier US Appliance Sols. Inc.*,
    2024 WL 590597 (N.D. Cal. Feb. 13, 2024),
    *reconsideration denied*, 2024 WL 2273192 (N.D. Cal. May 20, 2024) .......................... *passim*

*Drescher v. Bracco Diagnostics Inc.*,
    2020 WL 1466296 (D. Ariz. Mar. 26, 2020) ..................................................... 39

*Frain Grp., Inc. v. Steve's Frozen Chillers*,
    2015 WL 1186131 (N.D. Ill. Mar. 10, 2015) ................................................... 51

*Gagetta v. Walmart, Inc.*,
    646 F. Supp. 3d 1164 (N.D. Cal. 2022) ................................................... 46, 47

*Gamez v. Summit Nats., Inc.*,
    2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) ................................................. 29

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
    2014 WL 2451290 (N.D. Cal. June 2, 2014) ................................................. 29

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006) ................................................................. 29

*Goodwin v. Countrywide Home Loans, Inc.*,
    578 F. App'x 688 (9th Cir. 2014) ............................................................. 53

*Grausz v. Hershey Co.*,
    2024 WL 312688 (S.D. Cal. Jan. 25, 2024) ......................................... 20, 21, 22

*Gutierrez v. Carmax Auto Superstores Cal.*,
    248 Cal. Rptr. 3d 61 (Cal. Ct. App. 2018) ................................................. 44

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................... 46

*Hanna v. Walmart Inc.*,
    2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) ............................................. 35, 36

*Harris v. R.J. Reynolds Vapor Co.*,
    2016 WL 6246415 (N.D. Cal. Sept. 30, 2016) ............................................. 35

*Hauck v. Adv. Micro Dev., Inc.,*
  2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ................................................ 43

*Herrington v. Johnson & Johnson Consumer Cos.,*
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................................ 25, 26, 45

*Hirsch v. BHS Home Appliances Corp.,*
  2022 WL 4596692 (C.D. Cal. July 21, 2022) .......................................... 48, 49

*Hodson v. Mars,*
  891 F.3d 857 (9th Cir. 2018) ............................................................ 42, 44

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp. Inc.,*
  545 N.E.2d 672 (Ill. 1989) .................................................................... 52

*Hurd v. Boston Sci. Corp.,*
  2023 WL 3564741 (C.D. Cal. Apr. 10, 2023) (Holcomb, J.) ........................ 53

*In re Intel Corp. CPU Mktg., Sales, Pracs. & Prods. Liab. Litig.,*
  2020 WL 1495304 (D. Or. Mar. 27, 2020) ............................................ 24, 28

*Johnson v. Harley-Davidson Motor Co. Grp., LLC,*
  285 F.R.D. 573 (E.D. Cal. 2012) ....................................................... 44, 45

*Jurgensen v. Felix Storch, Inc.,*
  2012 WL 2354247 (S.D.N.Y. June 14, 2012) ............................................ 41

*Kanan v. Thinx Inc.,*
  2021 WL 4464200 (C.D. Cal. June 23, 2021) ........................................... 46

*Klein v. Bayer Healthcare Pharms. Inc.,*
  2019 WL 3945652 (D. Nev. Aug. 21, 2019) ............................................. 40

*Krakauer v. Recreational Equip., Inc.,*
  2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ............................. 20, 21, 22, 23

*Krystofiak v. BellRing Brands, Inc.,*
  2024 WL 3012801 (N.D. Cal. June 14, 2024) ........................................... 47

*Kulp v. Munchkin, Inc.,*
  678 F. Supp. 3d 1158 (C.D. Cal. 2023) ............................................... 44, 45

*Lassen v. Nissan N. Am., Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016)..................................................23

*Lee v. Toyota Motors Sales*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014).................................................24

*Lentz v. Sanderson Farms, Inc.*,
  2020 WL 12656231 (N.D. Cal. Feb. 10, 2020) ................................52

*LiMandri v. Judkins*,
  60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) ....................................44, 45

*Lowe v. Edgewell*,
  2024 WL 150758 (N.D. Cal. Jan. 12, 2024) ....................................20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................23

*Mahnke v. Bayer Corp.*,
  2019 WL 8621437 (C.D. Cal. Dec. 10, 2019) ................................39

*Martinez v. Mead Johnson & Co.*,
  2022 WL 15053334 (C.D. Cal. Oct. 22, 2022) (Holcomb, J.) ................29, 30

*McGee v. S-L Snacks Nat'l*,
  982 F.3d 700 (9th Cir. 2020)............................................................24

*Micro Modular Techs. PTE Ltd v. Atheros Commc'ns. Inc.*,
  2010 WL 11558160 (C.D. Cal. Nov. 3, 2010) ................................51

*Miller v. PCM, Inc.*,
  2018 WL 5099722 (C.D. Cal. Jan. 3, 2018)......................................23

*Minkler v. Apple, Inc.*,
  65 F. Supp. 3d 810 (N.D. Cal. 2014 ................................................51

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...........................................................................30

*Nat'l Ass'n of Wheat Growers v. Bonta*,
  85 F.4th 1263 (9th Cir. 2023) ..................................31, 32, 33, 34

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
   585 U.S. 755 (2018) ................................................................................31, 34

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ........................................................................................ 29

*Oltman v. Holland Am. Line, Inc.,*
   538 F.3d 1271 (9th Cir. 2008) ..................................................................48, 49

*Ortega v. Nat. Balance Inc.,*
   2013 WL 6596792 (C.D. Cal. Dec. 16, 2013) ............................................... 53

*Ortiz v. Permanente Med. Grp., Inc.,*
   2013 WL 1748049 (N.D. Cal. Apr. 23, 2013) ............................................... 40

*Pang v. Samsung Elecs. Am., Inc.,*
   371 F. Supp. 3d 633 (N.D. Cal. 2019) .....................................................51, 52

*Pelayo v. Hyundai Motor Am., Inc.,*
   2021 WL 1808628 (C.D. Cal. May 5, 2021) .............................................24, 25

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.,*
   2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) ............................................... 40

*Rathkey v. Zimmer,*
   2022 WL 18359146 (C.D. Cal. Oct. 28, 2022) ............................................. 25

*Red v. Gen. Mills, Inc.,*
   2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) ............................................... 46

*Riva v. Pepsico, Inc.,*
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) .......................................................... 25

*Rodriguez v. Endangered Species Chocolate, LLC,*
   2024 WL 3157284 (S.D. Cal. Mar. 19, 2024) ............................................... 37

*Rodriguez v. Equal Exch., Inc.,*
   2024 WL 1421971 (S.D. Cal. Mar. 31, 2024) ............................................... 35

*Roshkovan v. Bristol-Myers Squibb Co.,*
   2023 WL 6787444 (C.D. Cal. Sept. 19, 2023) ............................................. 39

*Sanders v. Acclaim Ent., Inc.,*
    188 F. Supp. 2d 1264 (D. Colo. 2002)...................................................................31

*Sciortino v. Pepsico, Inc.,*
    108 F. Supp. 3d 780 (N.D. Cal. 2015).................................................................36

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,*
    2010 WL 3835874 (N.D. Ill. Sept. 24, 2010).....................................................51

*Simner v. LG Elecs. U.S.A., Inc.,*
    2022 WL 3152707 (D.N.J. Aug. 8, 2022).....................................................49, 50

*Sims v. Kia Motors Am., Inc.,*
    2014 WL 12558251 (C.D. Cal. Oct. 8, 2014)....................................................47

*Sloan v. Gen. Motors LLC,*
    2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ....................................................25

*Snyder v. Phelps,*
    562 U.S. 443 (2011)..............................................................................................30

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011)..............................................................................40

*Stewart v. U.S. Bancorp,*
    297 F.3d 953 (9th Cir. 2002)................................................................................39

*Storm Mfg. Grp. Inc. v. Weather Tec Corp.,*
    2013 WL 5352698 (C.D. Cal. Sept. 23, 2013)...................................................53

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007)................................................................................22

*Toxic Injuries Corp. v. Safety-Kleen Corp.,*
    57 F. Supp. 2d 947 (C.D. Cal. 1999)..............................................................25, 26

*In re Toyota I,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)...............................................................27

*In re Toyota Motor Corp.,*
    790 F. Supp. 2d 1152 (C.D. Cal. 2011)..........................................................25, 27

*Watters v. TSR, Inc.*,
  715 F. Supp. 819 (W.D. Ky. 1989), *aff'd*, 904 F.2d 378 (6th Cir. 1990)..................31, 35

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) .........................................................................42

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012).....................................................................21, 46

*Wilson v. Midway Games, Inc.*,
  198 F. Supp. 2d 167 (D. Conn. 2002) ...................................................30, 31, 35

*Winters v. Ridgewood Indus., LTD*,
  2020 WL 3035217 (E.D. Cal. June 5, 2020) ...........................................24, 25

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*,
  471 U.S. 626 (1985)..............................................................30, 31, 32, 33

**Constitutional Provisions**

U.S. Const., amend. I.......................................................................... *passim*

**Statutes**

42 U.S.C.
  § 6291(8)..............................................................................................41
  § 6292(a)(10) ........................................................................................42
  § 6297(a) ...............................................................................15, 40, 41, 42
  § 6297(a)(1)(B) ....................................................................................41
  § 6297(c) ...............................................................................15, 37, 38
  § 6297(d)(3) ..........................................................................................38

Cal. Civ. Code § 3294(b) ...................................................................53

Cal. Code Regs. tit. 27, § 27001..........................................................35

Cal. Com. Code
  § 1201(10)............................................................................................50
  § 2316(2) ..............................................................................................48

Cal. Health & Safety Code § 25249.6 ...................................................35

Ill. Comp. Stat.

    5/1-201(10) ......................................................................................................... 49

    5/2A-214(2) ........................................................................................................ 48

**Other Authorities**

H.R. Rep. No. 100-11 ..................................................................................... 39, 40

Fed. R. Civ. P

    8 ................................................................................... 22, 23, 43, 44

    9 ..................................................................................................... 42

    9(b) ........................................................................................... *passim*

    12(b)(1) ............................................................................................ 16

    12(b)(6) ............................................................................................ 16

S. Rep. No. 100-6 (1987), *reprinted in* 1987 U.S.C.C.A.N. .................................. 39

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      While little has changed in Plaintiffs' allegations since their prior complaints, this

3 litigation has changed markedly since Defendants filed their prior motions to dismiss.

4 Those motions focused on Plaintiffs' allegations that all gas cooking appliances were

5 unmerchantable and must be removed from the market unless they were redesigned

6 because they posed an unreasonable safety hazard to human health. At oral argument, to

7 avoid Defendants' preemption defense, Plaintiffs plainly disavowed that theory, clarifying

8 that their complaint is based solely on an alleged failure to warn, and not that Defendants'

9 gas cooking products are unsalable. *See Norris*, ECF 60 at 41:19-42:2 ("Tr.") ("We're not

10 alleging that they have to ban gas stoves, take them off the shelves. We're not alleging that

11 they have to redesign them. That's up to them. All they have to do at a minimum is put a

12 warning on their stoves.").

13      Whether based upon their pivot to a warning theory, or back to their original theory

14 of unmerchantability, Plaintiffs' shape-shifting does not save their claims. Whatever their

15 form, Plaintiffs must plead facts that affirmatively connect their liability theory to their

16 products. Absent from Plaintiffs' Complaints, however, are factual allegations to plausibly

17 infer there is any "defect" in **their products**. Plaintiffs instead conclude their products are

18 defective by incorporating inconsistent and inconclusive research about speculative health

19 risks from sources involving **other products**. And even those sources involving **other**

20 **products** do not establish a causal connection between the use of **any gas cooking**

21 **appliances** and the risks Plaintiffs allege as the basis of their claimed economic harm.

22 Plausibility—and unlocking the doors of discovery—demands something more than a

23 scientific debate over an unproven hypothesis.

24      As such, Plaintiffs cannot meet Article III's injury requirement. Nor can Plaintiffs

25 skirt their lack of standing by seeking injunctive relief, as they profess knowledge of the

26 alleged risks they claim are attendant to every gas appliance, so they cannot be "duped"

27 into buying another and there is thus no real and immediate threat of repeated injury.

28      Plaintiffs' requested relief—damages and an injunction premised on Defendants'

alleged failure to provide a warning of alleged health risks stemming from cooking with gas appliances—also violates Defendants' First Amendment rights against compelled commercial speech. The purported "risks" remain the subject of unresolved scientific debate. Defendants cannot be compelled to broadcast such uncertainty.

Plaintiffs' claims also violate California's Proposition 65 pre-suit notice requirement because they merely repackage Proposition 65 claims in alleging that Defendants should have warned that their appliances "emit air pollutants such as . . . carbon monoxide" at levels "linked to . . . cancer." *Drake v. Haier US Appliance Sols. Inc.*, 2024 WL 590597, at *8 (N.D. Cal. Feb. 13, 2024) (dismissing analogous claims with prejudice as "a deliberate effort to circumvent Proposition 65's notice requirements") ("*Drake I*"), *reconsideration denied*, 2024 WL 2273192 (N.D. Cal. May 20, 2024).

Plaintiffs' claims further fail under the Energy Policy and Conservation Act's ("EPCA") broad preemption provisions, 42 U.S.C. § 6297(a), for seeking disclosure of information on the appliances' labels directed to consumers at point of sale or use not required by federal law, and 42 U.S.C. § 6297(c) as they would significantly burden the manufacturing, marketing, distribution, and sale of the appliances on a national basis.

Plaintiffs' fraud claims also fail because Plaintiffs do not plead fundamental elements of their claims, including a duty to disclose and reliance. Plaintiffs' warranty claims fail under Plaintiffs' own contradictions, as they allege Defendants' gas cooking appliances are no different from any other in the trade, while simultaneously alleging that Defendants' appliances are "unmerchantable." Plaintiffs have now filed 10 complaints before this Court alone, with ample opportunity to adequately plead their claims. No further amendment can cure the defects in their claims. Accordingly, the *Hedrick* Third Amended Complaint ("H"), *Goldstein* Second Amended Complaint ("G"), and *Norris* Second Amended Complaint ("N") must be dismissed without leave to amend.

## STATEMENT OF FACTS

### A.    This Litigation and the Court's Prior Order

Plaintiffs Hedrick (BSH), Goldstein (Whirlpool), and Norris and Stone (Samsung)

1   initiated this litigation against Defendants between March and July 2023, with Plaintiff

2   Kalergis (BSH) added in October 2023. BSH, Whirlpool, and Samsung each moved to

3   dismiss the respective Complaints under Rules 12(b)(1) and 12(b)(6).

4           After oral argument, the Court granted in part and denied in part Defendants'

5   motions, dismissing Plaintiffs' affirmative misrepresentation claims, including under

6   California's False Advertising Law ("FAL"), and Plaintiff Kalergis's Illinois fraudulent

7   omission and ICFA claims for failure to satisfy Rule 9(b) because Plaintiffs "fail[ed] to

8   identify the content of any actionable statement" "with the required particularity."

9   *Hedrick*, ECF 67 at 19-20 ("Op."). The Court also dismissed for lack of Article III

10  standing Plaintiffs' requests for injunctive relief, finding that their "conclusory allegations

11  in their Amended Complaints d[id] not plausibly suggest a real and immediate threat of

12  repeat injury." Op. 27-28. The Court likewise struck the *Hedrick* Plaintiffs' prayer for

13  punitive damages because "Plaintiffs ha[d] failed to plead facts sufficient to establish

14  their entitlement to punitive damages."  Op. 28. The Court granted leave to amend.

15          The Court held that Plaintiffs had plausibly pleaded economic-based standing

16  because they "allege[d] that the danger posed by gas stoves is inherent to Defendants'

17  products, not merely when those products are used in an unsafe manner," and that, "had

18  they known of the risk[,] . . . they would not have purchased those products," which was

19  sufficient. Op. 10. In assessing whether Plaintiffs' state-law claims were preempted by

20  EPCA, however, the Court construed Plaintiffs claims differently. The Court observed

21  that Plaintiffs "are not arguing that [Defendants'] products should never have been

22  sold—just that Defendants should have disclosed the risks" through a warning label, and

23  that Plaintiffs accordingly "'overpaid' for Defendants' products." Op. 12-14 ("Plaintiffs

24  allege that Defendants should have included a warning. As Plaintiffs note, 'a gas stove

25  with a warning burns the same amount of gas as one without a warning.'"). Those

26  allegations, the Court concluded, did "not concern energy use" and thus did not implicate

27  EPCA's broad preemption provisions. Op. 12-13.

28          The Court also declined to dismiss Plaintiffs' omission-based fraud claims based

on Plaintiffs' allegations that Plaintiffs had adequately pled a "defective design that carries significant (and undisclosed) air pollution risks." Op. 21.

Thereafter, Plaintiffs filed the current Complaints, which also joined a new plaintiff, Antic, in *Hedrick*. Plaintiffs' Complaints no longer assert a California FAL or an Illinois ICFA or fraudulent omission claim, and purged all references to pursuing claims based on an alleged affirmative misrepresentation. Plaintiffs now seek to proceed solely with a theory based on an alleged fraudulent omission, and continue to assert claims for breach of implied warranty of merchantability under the California and Illinois UCC and Song-Beverly Act ("SBA"), and unjust enrichment. Despite this Court's prior ruling dismissing their requests for injunctive relief and striking their prayer for punitive damages, without alleging any new facts, Plaintiffs continue to seek that relief here.

### B.    Plaintiffs' Allegations

Each Plaintiff alleges they bought a gas range, stove, or cooktop manufactured by one of the Defendants. Hedrick bought a Thermador gas stove in August or September 2017, Kalergis bought a Thermador gas range in October 2020, and Antic bought a Bosch gas range in May 2021. H ¶¶ 48-50. Goldstein bought a KitchenAid gas range in September 2022. G ¶ 47. And Norris and Stone bought a Samsung gas cooktop and Samsung gas range in December 2020 and January 2020, respectively. N ¶¶ 48-49.

Each Plaintiff alleges they bought their gas appliances for home cooking—and that they still use them for that purpose. H ¶¶ 52-53, 55-56, 58-59; G ¶¶ 48-49; N ¶¶ 54-56. Plaintiffs' claims are based on their allegations that Defendants "sold [the appliances] for cooking inside the home, while omitting any warning of [a] serious defect"— specifically, that all gas appliances "emit harmful pollutants" "because they all use natural gas to create heat for cooking." H ¶¶ 18, 35; G ¶¶ 19, 35; N ¶¶ 17, 35. Plaintiffs allege they have been harmed because they would not have bought the appliances had they known they emitted harmful pollutants. H ¶ 62; G ¶ 53; N ¶ 58.

What Plaintiffs do **not** allege is far more revealing. Plaintiffs do not—and cannot—allege that a single Plaintiff experienced **any** adverse health effects from their

appliances or that their gas appliances have ever malfunctioned or failed. Nor does any Plaintiff even allege that they stopped using their gas appliance upon learning of the alleged "defect." Moreover, while Plaintiffs attempt to substantiate the alleged "defect" by selectively citing five studies, Plaintiffs do not identify a **single** study or include any allegations that plausibly suggest that **the gas appliances they purchased** emit organic gases at any specific level—or even that any of **Defendants'** gas appliances does so.

Of the five studies Plaintiffs cite, only one—published in 2022 after all but Plaintiff Goldstein purchased their appliances—measured emissions from gas-powered appliances in a controlled setting (the "sealed-chamber study"). *See Goldstein*, ECF 60-3. The sealed-chamber study tested gas appliances that were between 3 and 30 years old and makes no mention of any product manufactured by any Defendant. The study measured emissions from unspecified cooktops and ovens by containing the stove "in an airtight portion of the room . . . by hanging plastic sheets." *Id.* at 3. In that sealed environment, the researchers found that nitrogen oxides were linearly related to the amount of natural gas burned and that "ovens could produce enough $NO_2$ to exceed . . . 100 [parts per billion] within a few minutes." *Id.* at 8. But no Plaintiff alleges they "hang[] plastic sheets" "along the ceiling, walls, and floor" of their home, or that **their particular appliances** release "pollutants" reaching the levels reported.

The studies Plaintiffs cite also fail to plausibly establish a causal connection between those emissions and the claimed health risk. Three of the five studies attempt to **correlate** exposure to nitrogen oxide emissions with health symptoms. Those studies, one of a group of schoolchildren in Hong Kong and two of groups of asthmatic children in Baltimore, asked participants to self-report on the children's asthma symptoms. G ¶¶ 19, 20, 23, 24; *Goldstein*, ECF 31-5. The studies do not conclusively establish gas-appliance emissions cause or worsen childhood asthma. For example, noting its "limited power to study health effects given [the] small sample size," one of those studies concluded that indoor $NO_2$ concentrations were higher, but only during the cold season, and higher concentrations of nitrogen oxide over a 24-hour period were "associated with

increased night time inhaler use"—but that "there were no associations between $NO_2$ and lung function or asthma symptoms." H ¶¶ 21 n.19; G ¶¶ 20 n.19, 22 n.22; N ¶¶ 20 n.19, 21 n.22; *see also Goldstein*, ECF 31-5 (2008 Baltimore study, stating, "Current evidence has not yet convincingly demonstrated that high indoor $NO_2$ concentrations contribute to the risk of developing asthma").

The last study cited is a December 2022 mathematical calculation of the "population attributable fraction" of childhood asthma that is likely to be linked to "gas stove use," based on the American Housing Survey's estimate of how many homes have gas appliances. H ¶ 20 & nn.16-17; G ¶ 18 & nn.15-16; N ¶ 19 & nn.16-17. That calculation, one of its funders confirmed, "does not assume or estimate a causal relationship" between childhood asthma and natural gas appliances. *Goldstein*, ECF 31-7 at 2. Plaintiffs also cite three policy reports—from the World Health Organization, Environmental Protection Agency, and Rocky Mountain Institute—that summarize those, and other, earlier studies. Those reports conclude that the "evidence for a relationship between gas cooking (and indoor $NO_2$) and asthma prevalence or asthma symptoms was ***inconsistent***" and "***insufficient to support causality***." *Goldstein*, ECF 31-3 at 76 (emphases added).

Not one of the studies or reports tested an appliance manufactured by Defendants. Not one plausibly establishes that, regular, home use, gas appliances manufactured by Defendants produce "pollutants" at any specific level. Not one plausibly demonstrates gas appliance use causes any adverse health effects. And yet, based solely on those studies and news articles describing them, Plaintiffs assert Defendants were duty-bound to disclose that gas appliances "emit harmful pollutants when used for cooking," and should be held liable for not warning their customers of these unproven and speculative health risks. H ¶ 35; G ¶ 35; N ¶ 35.

## ARGUMENT

### I. Plaintiffs' Allegations That All Gas Ranges Are Unsafe Are Implausible

As the Court recognizes, Plaintiffs' claims rest on the notion that "Defendants'

1  gas stoves produce *unsafe* levels of pollutants *during their normal use*." Op. 10, 21; *see also*

2  Tr. 19:13-22. But that notion is, on the face of the Complaints, implausible.

3      Defendants recognize that this Court previously held otherwise. Op. 10, 21. With

4  respect, however, the prior conclusion misapplies the plausibility standard of *Twombly*

5  and *Iqbal*. At the hearing, the Court suggested that standard was equivalent to accepting

6  all allegations but those of "little green men." Tr. 13:20-23 ("[I]t's a really high standard

7  that you have to overcome, implausibility, at this point. Iqbal/Twombly, we're talking

8  about a little green men sort of thing."). It is not. That interpretation comes from the

9  *Iqbal* dissent, and has **not** been adopted by the Supreme Court or the Ninth Circuit. *See*

10  *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting). Instead, the plausibility

11  standard requires well-pleaded factual allegations that support a **plausible**—not simply

12  "possible"—inference of liability. *Id.* at 681. "[F]acts that are merely consistent with a

13  defendant's liability" are not enough. *Id.* at 678 (quotation and quotation marks omitted).

14      In cases like this, where a consumer alleges that a product poses a "safety hazard"

15  because it contains or emits a particular substance, the caselaw generally establishes three

16  requirements to plausibly plead a safety hazard. The plaintiff must allege that (1) the

17  **particular product at issue** contains some substance, (2) the product contains a certain

18  **amount** of that substance, and (3) at that amount, the substance **causes** the safety risk.

19  *See, e.g.*, *Lowe v. Edgewell*, 2024 WL 150758, at *5-6 (N.D. Cal. Jan. 12, 2024); *Krakauer v.*

20  *Recreational Equip., Inc.*, 2024 WL 1494489, at *6 (W.D. Wash. Mar. 29, 2024); *Grausz v.*

21  *Hershey Co.*, 2024 WL 312688, at *1 (S.D. Cal. Jan. 25, 2024). Plaintiffs allege none of the

22  three here.

23      First, a consumer alleging a product is defective because of a safety hazard must

24  plausibly allege that that hazard manifests in **the particular product line** they bought.

25  *See Lowe*, 2024 WL 150758, at *5-6 (dismissing claims because plaintiffs "fail[ed] to

26  plausibly allege the presence of PFAS in Edgewell's tampon products"); *Krakauer*, 2024

27  WL 1494489, at *6 (requiring plaintiff to have "tested the same model of jacket he

28  purchased for PFAS" to state a claim); *see also Dalewitz v. Procter & Gamble Co.*, 2023 WL

6215329, at *3-4 (S.D.N.Y. Sept. 22, 2023) (dismissing claims where allegations that dental floss plaintiff bought contained PFAS were not plausible). Here, Plaintiffs have not conducted any testing on the products they claim are unsafe, cited to studies testing the products that they purchased, or included any allegations that plausibly suggest that **the appliances they bought** emit organic gases at any specific level. Instead, Plaintiffs ask the Court to infer that **all** gas appliances "emit air pollutants" at allegedly unsafe levels based solely on the sealed-chamber study. G ¶ 15 & n.7. But that study does not plausibly permit that inference: it fails to identify any gas appliance it tested and specifically notes that those tested ranged from 3 to 30 years old. *Goldstein*, ECF 60-3.

Second, courts have required that plaintiffs allege the amount of the toxin the product contains. *See, e.g.*, *Grausz*, 2024 WL 312688, at *5 (allegations that "lead and cadmium are carcinogens, [and] that 'there may be no safe level of exposure to a carcinogen,'" were insufficient to plausibly allege a safety hazard absent allegations about "the amounts of the substances in Hershey's Products"); *see also Krakauer*, 2024 WL 1494489, at *6-7 (dismissing complaint for lack of standing where plaintiff "fail[ed] to plausibly allege that his raincoat contains . . . PFAS at a level sufficient to cause an injury"). Plaintiffs here, as in *Krakauer* and *Grausz*, do not allege what amount of pollutants, if any, their appliances produce. Instead, they again ask the court to infer that their appliances must produce "pollutants" at a particular level based on their citations. But the only study that tested what amount of "pollutants" other gas appliances produce—the sealed-room study—did so in extraordinary circumstances that Plaintiffs do not allege exist in their, or any reasonable consumer's, homes. G ¶ 15 & n.7. Accordingly, that study cannot support a "plausible" inference about the amount of organic gases to which Plaintiffs' products supposedly actually expose them.

And finally, as the Ninth Circuit has explained, "to plausibly allege the existence of an unreasonable safety defect," plaintiffs must "plead . . . facts indicating how the alleged design defect . . . causes" the harm they fear. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012); *see also Grausz*, 2024 WL 312688, at *5 (plaintiff failed to

allege that amounts of lead and cadmium in chocolate "are actually enough to cause the health effects" plaintiff complained of); *Krakauer*, 2024 WL 1494489, at *6-7; *Dalewitz*, 2023 WL 6215329, at *3. Plaintiffs also fail to meet this third requirement. None of the studies they cite plausibly demonstrates that gas-appliance use causes any health effects. Instead, those studies clearly state that, "***[c]urrent evidence has not yet convincingly demonstrated that high indoor $NO_2$ concentrations contribute to the risk of developing asthma.***" *See, e.g.*, *Goldstein*, ECF 31-5; *Goldstein*, ECF 31-3 ("[E]vidence for a relationship between gas cooking (and indoor $NO_2$) and asthma prevalence or asthma symptoms was ***inconsistent***" and "***insufficient to support causality***").

In short, Plaintiffs plead none of the three requirements to plausibly allege their appliances are unsafe under Rule 8. Instead, by asking the Court to credit the allegation that their appliances emit "pollutants" at unsafe levels in ordinary use, Plaintiffs ask the court to make three implausible inferences: that (1) because ***other and potentially much older products*** emit "pollutants," Plaintiffs' appliances must, too; (2) because those other products emit ***certain levels*** of pollutants in ***extraordinary circumstances***, Plaintiffs' appliances must do so in ordinary use; and (3) because some research has found an ***association*** between increased exposure to nitrogen oxide and inhaler use by asthmatic children at night, the appliances must ***cause*** harm. But the studies Plaintiffs cite do not plausibly support those inferences—and so, Plaintiffs' allegations fail under Rule 8. *Iqbal*, 556 U.S. at 681.

Moreover, because their claims rest on allegations of fraud, Plaintiffs must meet the heightened standard laid out in Rule 9(b), which requires such allegations to "be specific enough to give defendants notice of the particular misconduct . . . alleged to constitute the fraud . . . so that they can defend against the charge." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); Op. 19. That "heightened" standard demands more than Rule 8—which means that, even if the Court finds Plaintiffs' allegations "plausible," it still must dismiss Plaintiffs' fraud-based claims because Plaintiffs fail to define the alleged fraud "with particularity." *See, e.g.*, *Miller v. PCM, Inc.*, 2018 WL

5099722, at *7 (C.D. Cal. Jan. 3, 2018) (even though allegations "raise[d] a plausible inference" under Rule 8, same allegations were "impermissibly vague" "under the heightened pleading requirements of Rule 9(b)); *Krakauer*, 2024 WL 1494489, at *10 (omission claims were implausible **and** defective under Rule 9(b)). Here, Plaintiffs fail to meet this heightened standard because they fail to identify a particular product, chemical, or harm. Because such sweeping and vague allegations do not enable Defendants to effectively defend the claims, Plaintiffs fail to meet Rule 9(b)'s particularity requirement.

## II.    Plaintiffs Lack Article III Standing

### A.    Plaintiffs Do Not Allege Any Cognizable Article III Injury

Plaintiffs fail to allege an injury-in-fact to pursue their claims. "To establish Article III standing, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the defendant's conduct; and the injury must be redressable by a favorable decision." *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1279 (C.D. Cal. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). An injury "must be **certainly** impending"; "'allegations of **possible** future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases added) (quotation marks omitted).

Plaintiffs do not allege that they suffered any harm as a result of using their gas appliances, or any malfunction or failure in their appliances. As such, each tries to establish standing by alleging economic injury. As here, "when economic loss is predicated solely on how a product functions, and the product has not malfunctioned, . . . something more is required than simply alleging an overpayment for a 'defective' product." *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015) (quotation marks omitted), *aff'd*, 717 F. App'x 720 (9th Cir. 2017). Plaintiffs try to allege the "something more" by claiming they would not have bought the products if they knew of the claimed defect; and that they overpaid because (a) their appliances are defective; and (b) based on market forces. H ¶¶ 115-16, 123; G ¶¶ 53, 116-17, 124; N ¶¶ 115-16,

123; Op. 10. Plaintiffs do not plausibly allege standing under any of these theories.

"Agreeing with the *Drake* court's analysis," this Court previously held that Plaintiffs had economic-based standing because they "allege[d] that the danger posed by gas appliances is inherent to Defendants' products, not merely when those products are used in an unsafe manner." Op. 10. The *Drake* court's analysis, however, is legally flawed and conflates distinct aspects of the standing inquiry, including by finding that an allegation of "defect" shows a "market effect." These are two independent aspects of standing and each must be considered separately. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705-08 (9th Cir. 2020). To support their claims, Plaintiffs must concretely allege a defect or an objective effect on the secondary market for their used products.[1]

Regardless of the theory of injury pursued, Article III standing jurisprudence never turns on whether the posited issue is "inherent" or not. Indeed, there are myriad cases dismissing claims for lack of standing where the claimed issue was "inherent" to the product and purportedly created risk during normal use (*e.g.*, popcorn that contained allegedly unhealthy partially hydrogenated oils leading to exposure from consumption (*McGee*), a pre-collision braking function that was ineffective while operating the vehicle (*Lee v. Toyota Motors Sales*, 992 F. Supp. 2d 962 (C.D. Cal. 2014)), vehicles that could be hacked and controlled by third-parties (*Cahen*), security vulnerabilities in computer processors, corrected with patches that slowed down their speed (*In re Intel Corp. CPU Mktg., Sales, Pracs. & Prods. Liab. Litig.*, 2020 WL 1495304 (D. Or. Mar. 27, 2020)), drawers that were unstable causing them to tip over (*Winters v. Ridgewood Indus., LTD*, 2020 WL 3035217 (E.D. Cal. June 5, 2020)), sudden stalling and smoking among other issues that occurred in vehicles (*Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628 (C.D. Cal. May 5, 2021)), fruit juice containing harmful toxins, arsenic and lead, leading to exposure from consumption (*Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012)), bath soaps containing carcinogenic materials leading to exposure from use

---

[1] Plaintiffs do not and/or cannot even seek to allege the bases for the other two potential means of showing economic standing:  loss of usefulness (which no Plaintiff claims) and benefit of the bargain (which requires a misrepresentation, and Plaintiffs do not allege one), *see McGee*, 982 F. 3d at 706.

(*Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)), beverage containing carcinogen leading to exposure from consumption (*Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045 (N.D. Cal. 2015)), and parts washer machines causing exposures to chemicals to workers (*Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947, 952 (C.D. Cal. 1999)). Merely alleging an "inherent" defect does not satisfy the constitutional irreducible minimum of injury-in fact.

**Alleged Defect.** To rest economic loss standing on a claimed product defect, a plaintiff must make "sufficiently detailed, non-conclusory allegations of the product defect." *In re Toyota*, 790 F. Supp. 2d 1152, 1165 n.11 (C.D. Cal. 2011) ("*In re Toyota II*"). Plaintiffs cannot establish standing on an alleged "defect" theory because they do not plausibly allege any defect in their own appliances. Plaintiffs here allege that their gas appliances are defective simply because they cook with gas and, they claim, cooking with gas emits harmful pollutants.[2] H ¶ 18; G ¶ 19; N ¶ 17. This is insufficient to establish an Article III injury in fact. *See, e.g., Winters*, 2020 WL 3035217, at *2 ("Plaintiff offers no meaningful description of the alleged 'defect' at all. The Complaint simply states that the drawers 'were made defectively, rendering them unstable and causing them to tip over.' The 'cause' of the furniture tipping over - i.e. the defect - is absent from the allegations."); *Pelayo*, 2021 WL 1808628, at *5 ("the FAC describes only the *effects* of the alleged defect, which is insufficient"); *contra, e.g., Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *2, *3 (N.D. Cal. Aug. 1, 2017) (defect identified by alleging engine consumes abnormal and improperly high quantity of oil, which results in low oil levels, insufficient lubricity levels and engine damage, with the excessive oil consumption being caused by defective low-tension oil control rings).

Even if "cooking with gas" could be a defect (which it is not), to establish injury-in-fact on the basis of a purported economic injury, Plaintiffs still must plausibly allege that cooking with gas credibly exposes them to a risk of harm. *See, e.g., Boysen*, 2012 WL

---

[2] Inconsistently, Plaintiffs also allege that there are safer "[a]lternative gas stove designs." H ¶ 31; G ¶ 31; N ¶ 31. If Plaintiffs' allegation is not that **all** gas stoves are defective, then they must make allegations detailing why **their** gas stoves are defective. *Cf. Rathkey v. Zimmer*, 2022 WL 18359146, at *2-3 (C.D. Cal. Oct. 28, 2022). They fail to do so.

2953069, at *7 (no economic injury for standing where "Plaintiff has plead that arsenic and lead are harmful toxins, and that the products contain those toxins, but he does not expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm"); *Herrington*, 2010 WL 3448531, at *5 (no economic injury for standing where "Plaintiffs do not allege that the levels of the substances in Defendants' products were unsafe" or "plead[ed] facts that tend to show [] a threat of physical harm")). As these cases demonstrate, the mere allegation of **exposure** is insufficient. *See also, e.g.*, *Safety-Kleen*, 57 F. Supp. 2d at 952 ("Such [exposure] allegations do not suffice to allege an 'injury in fact' to Plaintiff. Rather, they talk about 'exposure' to chemicals which are capable of causing injuries"; this is not concrete and particularized). As detailed above, Plaintiffs here do not allege any credible risk of harm to themselves; they allege only a claimed exposure. *See supra* Section I. Plaintiffs do not establish a "defect" basis of Article III injury.

This Court previously found that Plaintiffs alleged a defect because they asserted a reduction in demand for gas appliances and because some municipalities have considered or approved natural gas bans. Op. 10. But those allegations (albeit insufficient) relate to Plaintiffs' claimed "market effect" economic loss, and do not meet the requirements for alleging a defect in the product itself.

**Market Forces.** Plaintiffs do not establish economic standing on the basis that "market forces" have reduced the value of their appliances. In its prior Order, the Court cited, but did not discuss, Plaintiffs' allegations that demand for gas appliances has dropped as a result of media articles reporting on the debate over health effects associated with gas emissions and "natural gas appliance ban[s]" motivated by environmental concerns, not the alleged health risks about which Plaintiffs complain. But, the "market effects" theory of economic loss only applies when a plaintiff provides an objective basis to substantiate their claimed economic injury in an identified market. *In re Toyota II*, 790 F. Supp. at 1166 (plaintiff "alleged an **objective basis** to substantiate his overpayment injury" due to market effect (emphasis added)); *In re Apple Processor Litig.*,

832 F. App'x 507, 508 (9th Cir. 2020) (plaintiffs pleaded "**a metric** from which an effect on the resale value of Plaintiffs' devices can be plausibly inferred" (emphasis added)).

Plaintiffs have not alleged any concrete, objective basis to plausibly demonstrate a drop in their appliances' value due to the claimed risk of injury. Plaintiffs have not claimed, much less plausibly alleged, that there even is a market for used gas cooking appliances or in what market there was a claimed effect. Nonetheless, Plaintiffs make the conclusory declaration, unsupported by any facts, that as a result of news articles, "demand for gas stoves has dropped." H ¶ 42; G ¶ 41; N ¶ 42. Plaintiffs cite nothing to show a "drop" in "demand" for gas appliances, let alone that their resale value has dropped because of an alleged defect. The only "example" they provide is an article discussing a single survey, which purportedly showed that 425 adults[3] **expressed interest** in replacing their gas appliances after being told about one study that reportedly suggested gas appliances could have caused asthma in some children. H ¶ 43 n.56; G ¶ 42 n.48; N ¶ 43 n.53. Plaintiffs cite nothing to show that this claimed **interest** has actually reduced **demand** for gas appliances in the secondary market.

Plaintiffs' allegations stand in stark contrast to those where courts have found a market effect objectively alleged. For instance, a plaintiff asserting that his vehicle was defective because it could experience unintended acceleration established economic standing where he alleged a concrete drop in the trade-in value of his vehicle according to Kelley Blue Book and NADA Used Car Values. *In re Toyota II*, 790 F. Supp. 2d at 1159. Likewise, in *In re Toyota I*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010), "[s]everal Plaintiffs allege[d] that they sold or traded in their vehicles at a loss owing to the alleged SUA defect." *Id.* at 1166. Plaintiffs similarly alleged the market effect on their iPhones when they presented "a regression analysis of 76,000 transactions in the secondary smartphone market show[ing] a decline in the value of devices owned by the Plaintiffs after the announcement of [the product issue they alleged], and concluded that the decline was caused by these events." *In re Apple Processor Litig.*, 832 F. App'x at 508.

---

[3] The survey of 924 adults reportedly found that 46% of all gas stove-owning adults, or 425 people, were **interested** to replace their gas stoves. The margin of error was +/-3.

Plaintiffs here make no such showing; Plaintiffs have not claimed, much less plausibly alleged, that there even is a market for used gas cooking appliances, nor made any other objective demonstration of a change in the market.

It is also implausible for Plaintiffs to allege a market effect where they claim the alleged "defect" exists in the entire market. *See, e.g.*, *Cahen*, 147 F. Supp. 3d at 970 ("This means that potentially all post-2008 cars vehicles [*sic*] on the American market, and not just defendants' vehicles, lack the allegedly necessary security protections and firewalls. Because the alleged harm is unmanifested and widespread, how that would translate into economic injury is unclear."); *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723-24 (9th Cir. 2017) ("[N]early 100% of cars on the market include wireless technologies that could pose vulnerabilities to hacking or privacy intrusions. Thus, plaintiffs have only made conclusory allegations that their cars are worth less and have not alleged sufficient facts to establish Article III standing." (quotation marks omitted)); *In re Intel*, 2020 WL 1495304, at *6 (D. Or. Mar. 27, 2020) (plaintiffs "have not plausibly alleged diminution in value and resulting overpayment damages" where "[the] defect was widespread in the industry. Plaintiffs do not explain how this alleged defect would have affected the market price for Intel's chips in light of the fact that it involved all the chips in the market").

Plaintiffs' conclusory and unsupported allegations do not assert the concrete and objective basis required to rest economic loss standing on a claimed market effect.

## B.    Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs seek injunctive relief in the form of "[a]n order requiring Defendant[s] to stop selling [their] defective, unsafe Products without warning of the defect." H ¶ 158; G ¶ 159; N ¶ 150. This Court previously dismissed for lack of standing the same prayer for relief, finding that "Plaintiffs' conclusory allegations in their Amended Complaints do not plausibly suggest a real and immediate threat of repeat injury." Op. 27. Plaintiffs' allegations in their amended complaints are materially unchanged, and their prayers for injunctive relief should be dismissed again, this time with prejudice.

To obtain injunctive relief, Plaintiffs "must establish that they are 'realistically

threatened by a repetition of the violation' in order to establish the relief sought would redress the alleged injuries." *Gamez v. Summit Nats., Inc.*, 2022 WL 17886027, at *3 (C.D. Cal. Oct. 24, 2022) (quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)). Specifically, "[t]hey must establish a 'real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Here, as in their prior complaints, Plaintiffs allege they "face an imminent risk of harm" because, "[a]bsent injunctive relief, Defendant[s] may continue to advertise, promote, and sell the Products while representing that it is safe, and without warning the public about the health risks." H ¶ 63; G ¶ 54; N ¶ 60. Plaintiffs' new Complaints make only one change: they allege they "will purchase another stove in the future" because "[a] stove is not a once in a lifetime purchase." H ¶ 64; G ¶ 54; N ¶ 60. But, that Plaintiffs will buy another stove at some point in the future does not come close to establishing the constitutional requirement of a ***real and immediate*** threat of repeated injury.[4]

Plaintiffs allege that ***all*** appliances that use natural gas to create heat for cooking emit harmful pollutants and are accordingly defective. H ¶ 18; G ¶ 19, N ¶ 17. Because Plaintiffs are now admittedly aware that (in their view) all gas cooking appliances produce gas combustion health-harming emissions, H ¶¶ 63-64; G ¶ 54; N ¶ 60, it is not plausible that they will be misled in the future and fraudulently induced into buying a future gas appliance in the absence of emissions warnings on gas cooking appliances. *Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) ("Now they know. There is therefore no danger that they will be misled in the future."); *Gamez*, 2022 WL 17886027, at *4; *Martinez v. Mead Johnson & Co.*, 2022 WL 15053334, at *8 (C.D. Cal. Oct. 22, 2022) (Holcomb, J.).

Plaintiffs also cannot plausibly claim that they will be injured absent a warning added to the appliances because they allege that they will only buy Defendants' gas

---

[4] As a threshold matter, Plaintiffs do not even allege that they intend to buy a ***gas*** cooking appliance in the future. They allege only that they will buy a "stove" in the future, which could equally be "an electric" appliance that "does not carry the same risk." *See* H ¶ 2; G ¶ 2; N ¶ 2. That alone dooms Plaintiffs' standing to pursue injunctive relief.

appliances again if they are redesigned. H ¶¶ 63-64 ("Plaintiffs like Defendant's Products, and would purchase Defendant's Products in the future if the Products were ***redesigned*** to avoid emitting harmful pollutants." (emphasis added)); G ¶ 54; N ¶ 60. Plaintiffs are explicit that, absent a redesign and creation of a product that does not yet even exist in the public marketplace, they will not seek to rely on Defendants' product labeling, "and so they will not buy another Product from Defendant even though they would like to do so." H ¶ 64; G ¶ 54, N ¶ 60. Plaintiffs therefore lack standing to seek a warning label because they concede that a warning label is irrelevant to their own future purchasing decisions. *See, e.g.*, *Martinez*, 2022 WL 15053334, at *8.

The Court should reaffirm that Plaintiffs lack standing to seek injunctive relief.

## II.    Plaintiffs' Claims Are Also Barred by the First Amendment

Plaintiffs seek to compel a warning label, and to recover damages because Defendants did not "warn consumers of the [purported] risk of harmful pollutants while cooking" with their gas appliances. H ¶ 92; G ¶ 88; N ¶¶ 88; *see also* H ¶¶ 33-40; G ¶¶ 33-39; N ¶¶ 33-40. The First Amended prohibits both because Plaintiffs seek to compel speech or penalize Defendants for exercising their First Amendment rights not to speak. *See Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 637 (1985) ("[t]here is no longer any room to doubt that what has come to be known as 'commercial speech' is entitled to the protection of the First Amendment"); *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("The fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute."); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 178 (D. Conn. 2002) (States "cannot provide a remedy, either by [their] common law or by statute, that violates [a defendant's] free speech rights."). This Court should follow the numerous decisions dismissing claims that seek to impose liability based on a defendant's exercise of its free speech rights.[5]

---

[5] *See, e.g.*, *Watters v. TSR, Inc.*, 715 F. Supp. 819, 822 (W.D. Ky. 1989) (dismissing negligence and failure-to-warn claims as barred by First Amendment), *aff'd*, 904 F.2d 378

Directly on point here, the Ninth Circuit has held that the First Amendment prohibits the government from "compelling sellers to warn consumers of a potential 'risk'" that has never been confirmed by any regulatory body and is the subject of "unresolved scientific debate." *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1281, 1283 (9th Cir. 2023). The studies, reports, and news articles Plaintiffs cite make clear that, throughout the relevant time period, there has been (and continues to be) an unresolved scientific debate surrounding the alleged health "risks" purportedly associated with the use of gas appliances. Defendants had at the time of Plaintiffs' purchases—and continue to have—a First Amendment right to refrain from warning consumers about those unconfirmed "risks." Accordingly, Plaintiffs' claims impermissibly seek to compel speech and to impose liability on Defendants for exercising their rights not to speak and should be dismissed.

"The Supreme Court recognizes two levels of scrutiny governing compelled commercial speech." *Id.* at 1275. First, in *Central Hudson Gas Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 564 (1980), the Supreme Court held that restrictions on commercial speech must "directly advance" a substantial state interest and must not be "more extensive than is necessary to serve that interest." *Id.* at 566. The Ninth Circuit has referred to the *Central Hudson* standard as "intermediate scrutiny." *Bonta*, 85 F.4th at 1275. Second, in *Zauderer*, the Supreme Court "applied a lower level of scrutiny to laws that compel disclosures in certain contexts." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 768 (2018). *Zauderer* "requires the compelled speech be 'reasonably related' to a substantial government interest and not be 'unjustified or unduly burdensome.'" *Bonta*, 85 F.4th at 1275 (quoting *Zauderer*, 471 U.S. at 651). "To qualify for review under *Zauderer*, the compelled commercial speech at issue must disclose 'purely factual and uncontroversial information.'" *Id.* (quoting *Zauderer*, 471 U.S. at 651).

_____

(6th Cir. 1990); *DeFilippo v. Nat'l Broad. Co.*, 446 A.2d 1036, 1039 (R.I. 1982) (negligence and failure-to-warn claims barred by First Amendment); *Wilson*, 198 F. Supp. 2d at 182 (dismissing negligence and IIED claims as barred by First Amendment); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1282 (D. Colo. 2002) (dismissing negligence and strict liability claims as barred by First Amendment).

- 31 -

### A.    The Warning Is Not Purely Factual Under *Zauderer*

In determining whether compelled speech is "purely factual," the Ninth Circuit cautions that, although "[i]nformation that is purely factual is necessarily 'factually accurate,' . . . that alone is not enough to qualify for the *Zauderer* exception." *Bonta*, 85 F.4th at 1276. In the context of warning labels about purported health risks, the Ninth Circuit has made clear that even where the proposed warning is "entirely and literally true, that is not enough" if the purported health "risks" are the subject of "a legitimately unresolved scientific debate." *Id.* at 1279.

Plaintiffs' proposed warning, and the purportedly omitted warning, are not "purely factual," because, at the time of their purchases and continuing through the present, there has been a lack of scientific consensus regarding whether the gas appliances actually pose any adverse health risks. Although Plaintiffs cite studies and news articles purportedly supporting their contention that gas cooking products "harm the health of the households that use [them]," none of those sources contend that there is undisputed scientific evidence to support that claim. H ¶ 17; G ¶ 15; N ¶ 16. To the contrary, even if the Court finds Plaintiffs plausibly alleged health risks stemming from use of gas appliances, the sources cited by Plaintiffs make clear that: (1) none of the agencies responsible for regulating gas appliances or the "harmful pollutants" they allegedly emit have found the use of gas appliances dangerous; (2) there has been no finding of a causal connection between the use of gas appliances and adverse health effects; and (3) there is ongoing, unresolved scientific debate regarding whether there are any adverse health risks associated with using gas appliances.

In light of this uncertainty and unresolved scientific debate, any warning—even one that was "factually true" and attempted to place both sides of the debate on "equal footing"—would not be "purely factual." *Bonta*, 85 F.4th at 1281. By its very nature, any warning would "convey[] the overall message that [the use of gas appliances] is unsafe which is, at best, disputed." *Id.* (quotation marks omitted). In light of this ongoing scientific debate, *Zauderer* scrutiny is unavailable.

**B.    The Warning Is Not Uncontroversial Under *Zauderer***

In determining whether compelled speech is controversial, the Ninth Circuit considers both the objective and subjective nature of the speech. *Bonta*, 85 F.4th at 1277. Where there is "robust disagreement by reputable scientific sources" about the danger posed by a product, compelling the seller to warn of those dangers is objectively controversial. *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022). As the Ninth Circuit has explained, "[f]rom the standpoint of an average consumer, saying that something . . . has serious deleterious health effects—without a strong scientific consensus that it does—remains controversial." *Bonta*, 85 F.4th at 1278. The sources cited in Plaintiffs' Complaints aptly demonstrate that there is no "strong scientific consensus" that using gas appliances is associated with—let alone causes— adverse health effects. Therefore, the warning Plaintiffs contend Defendants were required to make—and through this lawsuit seek to enjoin them to make—"is undeniably controversial from an objective scientific standpoint." *Id.* Any such warning also is subjectively and objectively controversial because it would require Defendants to take "sides in a heated political controversy."[6] *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019).

Thus, "the presence of a genuine, scientific controversy" regarding whether gas cooking poses any health risk "is sufficient to place [any warning about that alleged risk] outside the realm of the lower level of review under *Zauderer*." *Bonta*, 85 F.4th at 1282.

**C.    Any Warning About the Potential "Risks" Would Not Survive Intermediate Scrutiny Under *Central Hudson***

Because *Zauderer*'s lower level of scrutiny does not apply, the Court should apply intermediate scrutiny, which the warning cannot survive. Under *Central Hudson*, "the government may compel a disclosure of commercial speech only if (1) it directly advances a substantial governmental interest, and (2) the restriction is not more extensive

---

[6] The news articles cited by Plaintiffs recognize that the debate over whether gas appliances are associated with health risks has become "part of the culture war" and is "the latest tempest in a teapot . . . in Washington politics." H ¶¶ 31 & nn.38, 42 & nn.55; G ¶¶ 31 & nn.37, 41 & nn.47; N ¶¶ 31 & nn.41, 42 & nn.52.

than necessary to serve that interest." *Bonta*, 85 F.4th at 1282-83. While the government "has a substantial interest in preserving the health of its citizens," "compelling sellers to warn consumers of a potential 'risk' never confirmed by any regulatory body—or of a hazard not 'known' to more than a small subset of the scientific community—does not directly advance that interest." *Id.* at 1283. Indeed, "the fact that science is evolving is all the more reason to provide robust First Amendment protections." *Id.* at 1283.

Here, it is clear that a warning about claimed dangers associated with the use of gas appliances would not "directly advance" the government's interest in preserving the health of its citizens, because (1) none of the federal agencies responsible for regulating gas appliances have found their use to be dangerous; and (2) there is no "known" causal connection between their use and adverse health effects. "[T]he Supreme Court has made clear that a state may not regulate commercial speech on the back of controverted evidence." *Bonta*, 85 F.4th at 1282 (citing *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011)).

Requiring sellers to provide a warning about disputed potential health effects associated with the use of gas appliances also fails intermediate scrutiny because such a requirement would be "more extensive than necessary" to serve any government interest in warning citizens about those disputed effects. *Id.* at 1283. As the Ninth Circuit explained, where the government seeks to compel sellers to issue a warning about a subject of unresolved scientific debate, the government has sufficient other means to promote its view that the product may "put[] humans at risk . . . 'without burdening [the sellers'] with unwanted speech.'" *Id.* (quoting *Becerra*, 585 U.S. at 757). For example, the government "could reasonably post information about [the purported health risks] on its own website or conduct an advertising campaign"—neither of which would "co-opt [the sellers] to deliver its message for it." *Id.* (quoting *Becerra*, 585 U.S. at 757).

Accordingly, Plaintiffs' requested relief—damages and an injunction premised upon the absence of a warning about the purported health "risks" associated with the use of gas appliances—would violate Defendants' First Amendment rights against compelled speech. Because Plaintiffs' claims seek to impose liability on Defendants for

- 34 -

exercising those First Amendment rights, they must be dismissed. *See, e.g.*, *Wilson*, 198 F. Supp. 2d at 178 (the state "cannot provide a remedy, either by [their] common law or by statute, that violates [a defendant's] free speech rights"); *Watters*, 715 F. Supp. at 822 & n.1 (dismissing claims upon finding defendant "cannot constitutionally be required to warn its readers of possible consequences of reading or playing the game materials").

## III.    Plaintiffs' Failure-to-Warn Labeling Claims Are All Barred for Failure to Provide Pre-Suit Notice Under Proposition 65

Plaintiffs' failure-to-warn claims under California law for fraudulent omission, breach of implied warranty of merchantability, unjust enrichment, and violation of the UCL and CLRA are all barred for failure to provide pre-suit notice under Proposition 65. Proposition 65 prohibits companies from "knowingly and intentionally expos[ing] any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning." Cal. Health & Safety Code § 25249.6. The chemicals subject to Proposition 65 are specifically identified in the applicable regulations, which include, among others, carbon monoxide, benzene, hexane, and toluene. Cal. Code Regs. tit. 27, § 27001.

"A private plaintiff may sue under the warning section of Proposition 65 only after he has provided a 60-day notice of the alleged violation and a certificate of merit to the alleged violator, the California Attorney General, and the district attorney, city attorney, or prosecutor in each jurisdiction where the alleged violation occurred." *Harris v. R.J. Reynolds Vapor Co.*, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016). "Crucially, this notice precondition applies to actions explicitly brought under Proposition 65 as well as to camouflaged suits to enforce Proposition 65's strictures using other laws." *Rodriguez v. Equal Exch., Inc.*, 2024 WL 1421971, at *2 (S.D. Cal. Mar. 31, 2024). Plaintiffs "cannot sidestep these requirements by trying to use the UCL or CLRA to plead around a claim that would be barred under Proposition 65." *Harris*, 2016 WL 6246415, at *2; *Hanna*, 2020 WL 7345680, at *3-4 (dismissing UCL claim alleging failure to warn of health risks of glyphosate that was disguised Proposition 65 claim). "Failure to provide notice is fatal to a plaintiff's claim." *Hanna v. Walmart Inc.*, 2020 WL 7345680, at *2 (C.D. Cal. Nov. 4,

2020); *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 790 (N.D. Cal. 2015) ("California cases strictly enforce the notice requirements and hold that pre-filing notice is mandatory."). "[B]ecause improper notice cannot be retroactively cured," "[d]ismissal with prejudice" is the "proper" remedy. *Drake I*, 2024 WL 590597, at *8 (quotation marks omitted).

Another court recently held that materially identical claims to those here—asserting that Haier's gas stoves are defective because they emit air pollutants that cause alleged health risks including cancer—were barred for failure to comply with Proposition 65's pre-suit requirements. *Drake I*, 2024 WL 590597, at *8. The plaintiff in *Drake* "allege[d] that Haier's gas stoves emit 'air pollutants . . . linked to . . . cancer' and 'poorer birth outcomes.'" *Id.* at *8. The court observed that these are "the same dangers Proposition 65 states it is intended to warn against," and that "carbon monoxide, as well as benzene, hexane, and toluene," which were all cited in the complaint, are all "Proposition 65-listed" "pollutants." *Id.* (citations omitted). The court explained that the plaintiff's "allegations combined several pollutants and alleged health risks implicating Proposition 65 into a single purported 'defect,'" and "broadly allege[d] that Haier failed to disclose all these Proposition 65 'health-harming pollutants' and risks," thereby "violat[ing] the UCL, FAL, and CLRA by failing to disclose this amalgamated 'defect.'" *Drake v. Haier U.S. Appliance Sols. Inc.*, 2024 WL 2273192, at *2 (N.D. Cal. May 20, 2024) ("*Drake II*"). The court dismissed the claims with prejudice for failure to comply with Proposition 65's pre-suit notice requirements, finding that the claims were "entirely derivative of an unspoken Proposition 65 violation" and thus "r[an] afoul of Proposition 65's pre-suit requirements, defects that cannot retroactively be cured." *Drake I*, 2024 WL 590597, at *8.

All of Plaintiffs' California claims here should be dismissed for the same reasons. Plaintiffs likewise allege that Defendants' gas appliances "emit air pollutants such as . . . carbon monoxide" at levels "linked to . . . cancer" and that this should have been disclosed. H ¶¶ 1, 2, 17; G ¶¶ 1, 2, 15; N ¶¶ 1, 2, 16. Here, as in *Drake*, the "pollutants" identified in the Complaints include "carbon monoxide" (*see* H ¶ 17; G ¶ 15; N ¶ 16) and

"benzene, hexane, and toluene" (article cited at H ¶ 1 n.3; G ¶ 1 n.3; N ¶ 1 n.3), all of "which are Proposition 65-listed." *See Drake I*, 2024 WL 590597, at *8. That Plaintiffs have "list[ed] in [their] complaint[s] other negative health outcomes in addition to cancer" does not "preclude[] a claim from being dismissed for pleading around P65's notice requirements." *Rodriguez v. Endangered Species Chocolate, LLC*, 2024 WL 3157284, at *4 (S.D. Cal. Mar. 19, 2024). Otherwise, that "would essentially eliminate the rule other courts have adopted and applied—precluding non-P65 claims based on the failure to disclose toxins covered by P65—because other negative health outcomes are all but assured for toxins governed by P65." *Id.*

Thus, here, as in *Drake*, "[Plaintiffs'] claims are entirely derivative of an unspoken Proposition 65 violation." *Drake I*, 2024 WL 590597, at *8. Plaintiffs do not allege that they complied with Proposition 65's pre-suit notice requirements. Thus, their California claims based on an alleged failure to warn must be dismissed with prejudice. *See id.*

## IV.   Plaintiffs' State-Law Claims Are Preempted

### A.   Plaintiffs' Claims Are Preempted Under 42 U.S.C. § 6297(c)

Sometimes, preemption can be complicated and hard to assess at the pleading stage. Here, it is not. The only plausible allegations of fact actually pleaded in the Complaints confirm that Plaintiffs' state-law claims fall squarely within the "broad preemption provisions" of EPCA and should be dismissed. *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024).

As the Ninth Circuit recently held, EPCA preempts any "'State regulation concerning the . . . energy use . . . of such covered product,'" like gas stoves, cooktops, and the like, including regulations relating to "'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are used." *Berkeley*, 89 F.4th at 1101 (third alteration in original) (quoting 42 U.S.C. § 6297(c)). This Court previously held that Plaintiffs' claims were not preempted because their "allegations do not concern the EPCA and the effect that Plaintiffs' claims would have on energy use, if any, is merely tangential and remote." Op. 13. Specifically, the Court relied on Plaintiffs' concession that they "are not arguing that [Defendants'] products

- 37 -

should never have been sold—just that Defendants should have disclosed the risks." *Id.* Yet, contrary to Plaintiffs' assurances that they are "not alleging that [Defendants] have to redesign [their gas appliances]," Tr. 41 at 19-21, Plaintiffs still allege that Defendants' gas appliances are defective, because "Defendant[s] failed to use an alternative design to avoid these harms and reduce harmful pollutants from gas stoves." H ¶¶ 32; G ¶¶ 31-32, 54; N ¶¶ 31-32, 60. To the extent Plaintiffs' claims are based on a redesign theory, they are preempted by EPCA because redesign would result in the regulation and reduction of natural gas levels generated by gas appliances in homes. *See* 42 U.S.C. § 6297(c).

Moreover, the Court's ruling did not take into account that Plaintiffs can prevail only if they prove a "defect," and the only defect that they posit is cooking with gas. Thus, to succeed on their allegations that their products breach implied warranties and lacked necessary warnings and communications, the Court must accept that cooking with gas is dangerous and poses an unreasonable safety hazard and that all of Defendants' appliances fueled by gas are defective. *See* H ¶ 36; G ¶ 36; N ¶ 36. Those claims, in addition to being implausible, are preempted.

The Court also did not evaluate whether EPCA preempts Plaintiffs' claims under the statutorily-prescribed standard, *i.e.*, whether, if granted, the relief sought would "significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." 42 U.S.C. § 6297(d)(3).[7] Under this standard, Plaintiffs' claims plainly are preempted.

Both compelling a product redesign or requiring Defendants to add a warning label to all gas appliances would undoubtedly increase distribution costs of manufacturers and distributors, disadvantage smaller manufacturers and distributors

---

[7] Congress set forth specific criteria for courts and the Department of Energy to consider when evaluating whether EPCA preempts a proposed state regulation: "(A) the extent to which the State regulation will increase manufacturing or distribution costs of manufacturers, distributors, and others," "(B) the extent to which the State regulation will disadvantage smaller manufacturers, distributors, or dealers or lessen competition in the sale of the covered product in the State," "(C) the extent to which the State regulation would cause a burden to manufacturers to redesign and produce the covered product type (or class)," and "(D) the extent to which the State regulation is likely to contribute significantly to a proliferation of State appliance efficiency requirements and the cumulative impact such requirements would have." 42 U.S.C. § 6297(d)(3).

who are unable to bear the significant costs associated with recalling their appliances in California (and in the case of BSH, also Illinois) and/or repackaging and redistributing them with Plaintiffs' proposed warning, and create a "patchwork of differing State regulations" on gas appliances that would "complicate their design, production and marketing plans" for appliance companies. S. Rep. No. 100-6, at 4 (1987), *as reprinted in* 1987 U.S.C.C.A.N. at 54-55. Or worse, with California and Illinois "State regulations" at stake, "[r]egulations in a few populous States [will] as a practical matter determine the product lines sold, nationwide, even in States where no regulations existed," *id.*, thereby "significantly burden[ing] manufacturing, marketing, distribution, sale or servicing of affected products on a national basis." H.R. Rep. No. 100-11, at 25.

The Court additionally applied an incorrect standard of review by relying on potential future fact development not alleged in the Complaints. Specifically, the Court acknowledged that Plaintiffs' proffered "reasonable and safer alternative design," such as the "jet-powered infrared gas-range burner," "consumes 'about 40% less natural gas,'" (*i.e.*, concern the quantity of gas used) but reasoned that it was no impediment to Plaintiffs proceeding with such claims because "that stove is simply 'one example'—and, therefore, not the only example—of a reasonable and safer alternative design." Op. 13-14. But in assessing Defendants' motions, the Court was constrained to consider only the well-pleaded, non-conclusory facts in the Complaints. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) ("In preemption cases the district court must analyze the complaint to determine if a federal preemption defense applies.") .[8] At the pleading stage,

---

[8] *See, e.g.*, *Drescher v. Bracco Diagnostics Inc.*, 2020 WL 1466296, at *4 (D. Ariz. Mar. 26, 2020) (magistrate "correctly" limited consideration to "Plaintiff's factual allegations, supported by the information in the attached exhibits, [which] do not raise a right to relief beyond a speculative level or state a facially plausible claim"); *Roshkovan v. Bristol-Myers Squibb Co.*, 2023 WL 6787444, at *7 (C.D. Cal. Sept. 19, 2023) (for a motion to dismiss based on preemption, "[r]eview is limited to the contents of the complaint," and dismissing for failure to sufficiently allege essential facts (quotation marks omitted)); *Mahnke v. Bayer Corp.*, 2019 WL 8621437, at *3 (C.D. Cal. Dec. 10, 2019) (failure-to-warn claims preempted where plaintiff's "conclusory allegation is unsupported by adequate factual allegations, and belied by Plaintiff's own allegations," and plaintiff failed to identify specific information needed in complaint to overcome preemption); *Klein v. Bayer Healthcare Pharms. Inc.*, 2019 WL 3945652, at *5 (D. Nev. Aug. 21, 2019) (failure-to-warn claims preempted because plaintiff "does not plead facts" sufficient to plausibly establish claim for relief); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2017 WL

1    it is **Plaintiffs'** burden to plead any purported reasonable and safer alternative designs in

2    their Complaints in order to give fair notice to Defendants and plausibly suggest an

3    entitlement to relief. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

4        Here, Plaintiffs have pleaded only two purported "safe, reasonable alternative

5    designs" they allege would reduce nitrous oxide emissions, both of which their pleadings

6    (and sources upon which they rely) state unequivocally would be impractical because

7    such designs are more costly, and either consume less natural gas at point of use or reduce

8    the gas appliances' energy efficiency. *See* H ¶ 31 & n.39; G ¶ 31 & n.38; N ¶ 31 & n.42

9    (identifying "jet-powered infrared gas-range burner," which "consumed about 40% less

10   natural gas," the cost of which "was probably significantly more than the existing

11   technology"); H ¶ 31 & n.40; G ¶ 31 & n.39; N ¶ 31 & n.43 (identifying "flame insert,"

12   which "reduced the efficiency of modified burners four or five percent," "cost more"

13   than regular burners, and significantly increased carbon monoxide emissions).

14       As Congress stated, "State standards for electric and gas kitchen ranges and ovens

15   are preempted," H.R. Rep. No. 100-11, at 24, and *Berkeley* makes clear that states "can't

16   skirt the text of broad preemption provisions by doing *indirectly* what Congress says they

17   can't do directly," 89 F.4th at 1107. Because Plaintiffs' state-law claims "wade[] into a

18   domain preempted by Congress," they are preempted and must be dismissed. *Id.* at 1098.

19       **B.    Plaintiffs' Labeling Claims Are Preempted Under 42 U.S.C. § 6297(a)**

20       To the extent Plaintiffs' claims are based on a purported failure to include a

21   warning for Defendants' gas appliances, including their request for injunctive relief, those

22   claims are all also preempted by EPCA's labeling provision under 42 U.S.C. § 6297(a).

23       EPCA's labeling provision preempts "any State regulation insofar as such State

24   regulation provides at any time for the disclosure of information with respect to any

25   measure of energy consumption or water use of any covered product if . . . such State

26   regulation requires disclosure of information with respect to the energy use, energy

27
28   4676585, at *5 (C.D. Cal. Oct. 10, 2017) (rejecting plaintiffs' argument against
     preemption because theory "not clearly alleged" in complaint); *Ortiz v. Permanente Med.
     Grp., Inc.*, 2013 WL 1748049, at *7 (N.D. Cal. Apr. 23, 2013) (claim preempted because
     "Court cannot assume" facts "not alleged").

efficiency, or water use of any covered product **other than information required under section 6294 of this title**." [9] *Id.* (emphasis added). This "preemption provision preempts state law claims only where those claims seek 'disclosure of information' about energy consumption for a covered product 'other than [the] information required' by" EPCA. *Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247, at *5 (S.D.N.Y. June 14, 2012) (quoting 42 U.S.C. § 6297(a)(1)(B)).

Here, gas kitchen appliances are covered under EPCA, and yet the Federal Trade Commission, charged by Congress with prescribing labeling rules related to energy use or efficiency applicable to all covered products, has chosen **not** to require the disclosure of any information on the labels of these products it regulates. Further, there can be no doubt that adding a warning only to the label of all gas appliances stating that they are defective and emit pollutants that are harmful to human health constitutes a disclosure of information on the products' labels directed to consumers at point of sale or use related to the products' energy use or quantity of natural gas directly consumed by the appliances. Indeed, the fundamental premise of Plaintiffs' claims is that cooking with gas creates a risk of harmful health effects and that Defendants' appliances are dangerous "because they all use natural gas to create heat for cooking." *See* H ¶¶ 18, 30; G ¶¶ 19, 30; N ¶¶ 16, 30. "[B]y its plain language EPCA preempts [this] regulation here" in the form of Plaintiffs' proposed labeling warning because Plaintiffs' proposed warning necessarily constitutes "the disclosure of information with respect to any measure of energy consumption of any covered product . . . other than information required under" federal law. *See Berkeley*, 89 F.4th at 1102; 42 U.S.C. § 6297(a). "That's because the plain wording of the clause . . . necessarily contains the best evidence of Congress' pre-emptive

---

[9] The Ninth Circuit has held that "'disclosure of information' may be interpreted to generally refer to the disclosure of information on labels directed to consumers at point of sale or use." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 497-98 (9th Cir. 2005). Further, as relevant here, "measure of energy consumption" is defined under the statute to mean "energy use, energy efficiency, estimated annual operating cost, or other measure of energy consumption." 42 U.S.C. § 6291(8). "Energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use." *Id.* § 6291(4). "Energy" refers to "electricity" or "fossil fuels," such as natural gas. *Id.* § 6291(3). And "covered product" means certain "consumer products," like "kitchen ranges and ovens." *Id.* §§ 6291(2), 6292(a)(10).

1    intent." *Berkeley*, 89 F.4th at 1101 (alteration in original) (quotation marks omitted).

2         This result is also plainly consistent with congressional intent. The Ninth Circuit

3    found that "[t]he legislative history . . . demonstrates that Congress intended to preempt

4    state energy efficiency standards, testing procedures, and consumer labeling

5    requirements" for EPCA-covered products, including kitchen ranges and ovens, "insofar

6    as they were 'other than' the applicable federal rules for testing and labeling." *Air

7    Conditioning*, 410 F.3d at 499, 500; 42 U.S.C. § 6292(a)(10). Plaintiffs' warning claims are

8    precisely the kind that Congress sought to preempt with EPCA. Plaintiffs' claims are

9    accordingly preempted under 42 U.S.C. § 6297(a) and must be dismissed.

10   **V.    Plaintiffs Fail to Plausibly Allege Omission-Based Fraud Claims Under the
          UCL or CLRA or for Fraudulent Omission**

11        Plaintiffs' fraudulent-omission, UCL, and CLRA claims[10] must be dismissed under

12   Rule 9(b) because Plaintiffs fail to identify with particularity the nature of the alleged

13   "defect," *see supra* Section I, when or how Defendants acquired exclusive, pre-sale

14   knowledge of that "defect," or what situation gave rise to a duty to disclose.

15        **A.    Plaintiffs Fail to Allege Pre-Sale Knowledge of the Alleged Defect**

16        Plaintiffs fail to plausibly plead, as they must to support their omission-based

17   fraud claims, that Defendants had pre-sale knowledge of the alleged defect. *Williams v.

18   Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017).

19        This Court previously found Plaintiffs' allegations sufficient to plead pre-sale

20   knowledge because "the instant cases are only at the pleading stage" and "Plaintiffs may

21   allege knowledge generally." Op. 22. But, as the Supreme Court explained in *Iqbal*,

22   "'generally' is a relative term"—Rule 9 "does not give [plaintiffs] license to evade the less

23   rigid—though still operative—strictures of Rule 8." 556 U.S. at 686-87.

24        First, the Court credited Plaintiffs' allegation that Defendants "monitor and keep

25   track of research on the health effects of their products." Op. 22. But, courts in this

26

27   _____

28   [10] This Court previously analyzed the fraudulent-omission, UCL and CLRA claims
     together and was correct to do so, because, where claims under the CLRA or the UCL's
     "fraudulent" prong rest on omissions theories, plaintiffs must plausibly allege the
     elements of common-law fraudulent omission to state those claims. Order at 15; *see
     Hodson v. Mars*, 891 F.3d 857, 865 (9th Cir. 2018).

1  Circuit, including decisions relied on in this Court's prior Order, require more than
2  conclusory allegations of industry research, or the mere existence of academic papers, or
3  third-party commentary to establish pre-sale knowledge. *See, e.g.*, *Hauck v. Adv. Micro Dev.,*
4  *Inc.*, 2019 WL 1493356, at *12 (N.D. Cal. Apr. 4, 2019) (allegations of pre-sale knowledge
5  of defect inadequate despite plaintiffs' "vague, sweeping statements about industry
6  research" and "knowledge garnered from conferences and academic papers"); *Coleman-*
7  *Anacleto v. Samsung Elecs. Am., Inc.*, 2017 WL 86033, at *9 (N.D. Cal. Jan. 10, 2017)
8  (rejecting reliance on complaints on third-party website to show knowledge). And even
9  if it were true that Defendants "monitor and keep track" of research, they could not have
10  seen the sealed-chamber study or the mathematical calculation before most Plaintiffs
11  purchased their appliances, because those studies were published in 2022 after all but
12  one of the Plaintiffs bought their appliances. *See* H ¶ 48-50; N ¶¶ 48-49; *Goldstein*, ECF
13  60-3 (sealed-chamber study, published in 2022); *Goldstein*, ECF 31-7 (discussing
14  mathematical calculation, published in December 2022).

15      Second, the Court credited the allegation that Defendants "are constituents of the
16  natural gas industry [and] that . . . the natural gas industry has worried that [the CPSC]
17  would regulate gas cooking emissions." Op. 22. But courts have rejected such conclusory
18  statements that an issue is "well-known in the [manufacturer's] community" as
19  insufficient "even under Rule 8's relaxed pleading standard." *Ahern v. Apple, Inc.*, 411 F.
20  Supp. 3d 541, 565-66 (N.D. Cal. 2019). Even if Plaintiffs had alleged that Defendants
21  saw the specific studies referenced in the Complaints, those studies—which did not test
22  Defendants' products and reached, at best, inconclusive results regarding adverse health
23  effects of cooking with gas—could not plausibly establish with particularity Defendants'
24  knowledge that their own gas appliances present a specific health risk.

25      Finally, the Court credited Plaintiffs' statement that "Defendants are aware that
26  their products emit health-harming pollutants." Op. 22. But "aware" is simply a synonym
27  for "knowledgeable," and so, this boilerplate recitation of an element of a fraudulent-

28

omission claim is insufficient under Rule 8. *See Iqbal*, 556 U.S. at 680-81.

Because none of Plaintiffs' allegations support a plausible inference that Defendants had pre-sale knowledge, Plaintiffs' fraud claims must be dismissed.

### B.    Plaintiffs Fail to Allege a Duty to Disclose

Even if Plaintiffs had plausibly alleged Defendants' knowledge that their appliances "emit harmful pollutants," mere knowledge would be insufficient because California requires **exclusive** knowledge to give rise to a duty to disclose. As this Court previously recognized, California law requires that a Plaintiff pleading fraudulent omission allege "an omission of a fact that the defendant was obliged to disclose." Op. 22 (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)).[11]

This Court previously found that Plaintiffs had adequately alleged "exclusive" knowledge of an alleged defect because "exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge of the defect." Op. 23 (citing *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012); *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1170 (C.D. Cal. 2023)). But that ruling conflicts with the Ninth Circuit's statement that "exclusive," and **not** "superior," is "the better reading of California law." *Hodsdon*, 891 F.3d at 864 n.5. Defendants are not aware of a **single** case where allegations of publicly-available third-party research or news articles— which is all Plaintiffs allege here—were sufficient to support a plausible inference that a defendant had knowledge sufficient to give rise to a duty to disclose. Indeed, in *Drake I*, the court dismissed materially identical omission claims because Plaintiffs had not pleaded a duty to disclose. 2024 WL 590597, at *1, *6.

---

[11] A duty to disclose arises if: (1) the parties are in a fiduciary relationship, (2) the defendant has exclusive knowledge of a material defect, (3) the defendant actively conceals a material defect, or (4) the defendant makes partial representations that mislead the plaintiff. *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997). The Court previously adopted Plaintiffs' formulation of the duty-to-disclose test, suggesting that a duty to disclose arises "when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." Op. 22. That formulation, though oft-repeated in cases **that do not involve safety concerns**, contradicts well-established California appellate precedent, which makes clear that "there is no independent duty to disclose" safety concerns outside of the four situations *LiMandri* recognized. *Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61, 85 (Cal. Ct. App. 2018).

In any event, Plaintiffs' allegations fail to satisfy even a lesser "superior" knowledge standard. As *Johnson* and *Kulp* recognize, even "superior" knowledge requires information to which the plaintiff would not have had equal access, such as "safety testing that would reveal the [particular product's] dangerous defect." *Cf. Kulp*, 678 F. Supp. 3d at 1169; *Johnson*, 285 F.R.D. at 583 (finding knowledge where manufacturer "exclusively has all of the aggregate data **on its products'** potential defects" (emphasis added)). Plaintiffs make no such allegations here.

Because Plaintiffs do not allege facts that support a plausible inference that any of the *LiMandri* factors are met here, they have not plausibly alleged that Defendants had a duty to disclose, and all of their omission claims should be dismissed.[12]

## C.    Plaintiffs Fail to Plausibly Allege Reliance on Any Omission

Finally, as the Court recognized, Plaintiffs must plead that they relied on Defendants' alleged omissions in purchasing their products. Op. 24-25. The Court previously held that Plaintiffs had done so because they alleged "material" omissions, which allowed the Court to infer reliance. *Id.* at 25. But, the Ninth Circuit has held that, in order to establish reliance, a plaintiff must show "that, had the omitted information been disclosed, one would have been aware of it **and** behaved differently," and that only the "behaved differently" element can be inferred when the omission is material." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quotation marks omitted). As discussed above, *see supra* Section I, Plaintiffs have not sufficiently pleaded a material safety hazard, and thus, inferring reliance is inappropriate.

However, even if Plaintiffs had, they fail to plausibly plead that they would have been **aware** of the omitted information had it been disclosed and could have thus plausibly behaved differently as a result. Plaintiffs allege that the "marketing materials and manual" or "packaging [and] stickers" omitted warnings about the gas appliances'

---

[12] Although the Court did not discuss the alternative bases for alleging a duty to disclose in its prior order, none are met here. The only other theory Plaintiffs continue to allege is that Defendants made "partial representations" by marketing their products for "home use" and disclosing other, entirely unrelated, safety risks. The Court, however, already rightly rejected that theory. Op. 19-20.

alleged emission of harmful pollutants. *See* H ¶ 52; G ¶ 35; N ¶ 51. But nowhere do Plaintiffs allege with any particularity what "marketing materials" they actually viewed **prior** to purchasing their appliances, or that they viewed their respective user manuals (or packaging or stickers) **prior** to purchase. Facing similar allegations, the *Drake* court dismissed the plaintiff's UCL, CLRA, and fraudulent omission claims because of his "glaring[]" pleading failure. 2024 WL 590597, at *6, *8. This Court should do the same.

### D.     Plaintiffs' UCL "Unlawful" and "Unfairness" Claims Based on Omissions Cannot Stand

Plaintiffs' failure to allege that Defendants acted fraudulently also dooms both their UCL "unlawful" and "unfairness" claims. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017); *Wilson*, 668 F.3d at 1145 & n.5 ("The failure to disclose a [defect] that a manufacturer does not have a duty to disclose . . . does not constitute an unfair or fraudulent practice" under the UCL.).

## VI.   Plaintiffs' Implied Warranty Claims Fail

### A.     Plaintiffs' Appliances Were Merchantable at the Time of Sale

Plaintiffs' warranty claims, under the UCC and the SBA, must also be dismissed. Under either, Plaintiffs must plausibly allege that their appliances were unmerchantable at the time of sale—that is, that the appliances would not "pass without objection in the trade" or be "fit for the ordinary purposes for which such goods are used." *See Red v. Gen. Mills, Inc.*, 2015 WL 9484398, at *6 (C.D. Cal. Dec. 29, 2015); *Am. Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 531 (Cal. Ct. App. 1995); *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 635 (S.D. Ill. 2022) (citing Illinois UCC); *Kanan v. Thinx Inc.*, 2021 WL 4464200, at *7 (C.D. Cal. June 23, 2021) (UCC elements apply to SBA claims).

Defendants did not previously ask the Court to consider whether Plaintiffs plausibly allege that their appliances do not "conform[] to the standard performance of like products used in the trade." *Red*, 2015 WL 9484398, at *6. Products that do are not unmerchantable. *Id.*; *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1179 (N.D. Cal. 2022) (dismissing implied warranty claim because plaintiff did not plausibly allege toxic metal levels in spice products differed from like products). Here, Plaintiffs cannot allege that

their products do not conform to the industry standard because they allege a defect **in every product in the industry**.

As to fitness for its ordinary use, this Court previously found Plaintiffs' allegations that "gas stoves are defective because they emit unsafe levels of pollutants" were "sufficient to sustain [the] implied warranty claims." Op. 16. But a plaintiff cannot plausibly allege that a product is unmerchantable simply by labeling it a safety hazard. *See, e.g.*, *Gagetta*, 646 F. Supp. 3d at 1179 (assertion that a product is "unsafe" is "conclusory"); *Krystofiak v. BellRing Brands, Inc.*, 2024 WL 3012801, at *11 (N.D. Cal. June 14, 2024) (same). And, because Plaintiffs' allegations that **their** gas appliances "emit unsafe levels of pollutants" in ordinary use are not plausible based on the handful of studies they cite, *see supra* Section I, Plaintiffs' implied warranty claims fail.

Instead, Plaintiffs must not only plausibly allege an unreasonable safety hazard but **also** that the hazard rendered their appliances unfit for their ordinary purpose, or at least that the hazard was "substantially certain" to manifest. *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558251, at *3 (C.D. Cal. Oct. 8, 2014); *Am. Suzuki*, 44 Cal. Rptr. 2d at 531. Here, Plaintiffs' definition of the alleged "defect" rests on the notion that the appliances emit pollutants that cause harm—but, because no Plaintiff alleges they have suffered any harm, they have not plausibly alleged the manifestation of the defect. Nor have they plausibly alleged a "substantial certainty" of manifestation, because the studies on which they rely do not support a plausible inference of causation. *See Goldstein*, ECF 31-5 (acknowledging that current evidence has not even "convincingly demonstrated that high indoor $NO_2$ concentrations **contribute** to the risk of developing asthma" (emphasis added)); *Goldstein*, ECF 31-7 (recognizing that 12.7% mathematical calculation "does not assume or estimate a causal relationship" between asthma and gas appliances.)

Moreover, Plaintiffs' statements to the Court in briefing and at oral argument in this case further undermine their allegations of unmerchantability. As this Court already recognized, despite the allegations in the Complaints, "Plaintiffs contend that they 'are not arguing that [Defendants'] products should never have been sold—just that

- 47 -

Defendants should have disclosed the risks.'" Op. 13; *accord* Tr. at 41:19-42:2 ("All they have to do at a minimum is put a warning on their stoves."). That concession should doom Plaintiffs' implied warranty claims, as the presence or absence of a warning on the label does not impact a product's fitness for its ordinary purpose; a product that is fit for its ordinary purpose with a warning is equally fit without one.

**B.    The Express Written Warranty Bars the *Hedrick* and *Norris* Plaintiffs' Implied Warranty Claims**

The *Hedrick* and *Norris* Plaintiffs' implied warranty claims also fail under the conspicuous terms of their respective appliances' express written warranties.[13] Written and conspicuous disclaimers of the implied warranty of merchantability are valid in both California and Illinois. Cal. Com. Code § 2316(2); 810 Ill. Comp. Stat. 5/2A-214(2).

This Court previously found BSH's and Samsung's disclaimers were "not effective to disclaim the implied warranties" as a matter of law, Op. 18, relying on a single decision, *Hirsch v. BHS Home Appliances Corp.*, 2022 WL 4596692 (C.D. Cal. July 21, 2022), where the court found a BSH disclaimer to be ineffective because the disclaimer was "buried in the middle of a 75-page long user manual," the disclaimer "text is not bolded, it appear[ed] at the very end of the manual's 2-page long description of the express warranty," and was "not set-off by an independent header, or other contrasting feature, that would draw the reader's attention to the disclaimer." *Id.* at *5. *Hirsch* appears to be an outlier, and is inconsistent with how the Ninth Circuit assesses "conspicuousness and clarity of notice" of terms and conditions provided to consumers. *Oltman v. Holland Am. Line, Inc.*, 538 F.3d 1271, 1276 (9th Cir. 2008) (quotation marks omitted).

In *Oltman*, the Ninth Circuit held that a "travel booklet" provided reasonable notice under this standard when the "contract" portion of the booklet was first mentioned in the table of contents, even though the actual "terms and conditions" did not appear until page 14, and the one-year limitations clause at issue (not mentioned specifically in the table of contents) appeared on page 16-17 in tiny font the same size as the surrounding text, immediately following a small bold heading of the same size

---

[13] Plaintiff Goldstein filed suit within the limited warranty period for her purchase.

1   "entitled 'Time Limits for Noticing Claims and Filing and Service of Lawsuits.'" *See id.*

2   at 1273-74, 1276-77;[14] Salamon Decl., Ex. 1 at 5, 19.

3          Other courts have rejected Plaintiffs' contrary categorical rule that a disclaimer is

4   ineffective when included in a larger document or manual providing consumers with

5   important terms and information on a variety of different topics, when the manual

6   includes a table of contents that directs users to where they can find the full terms of the

7   warranty. *See, e.g.*, *Dang v. Samsung Elecs. Co.*, 2018 WL 11348883, at *6 (N.D. Cal. July 2,

8   2018) ("*Dang I*") (rejecting plaintiff's assertion that a similar disclaimer was "buried on

9   page 21 of the 63-page [manual]" (quotation marks omitted)), *aff'd*, 803 F. App'x 137 (9th

10  Cir. 2020); *Simner v. LG Elecs. U.S.A., Inc.*, 2022 WL 3152707, at *9 (D.N.J. Aug. 8, 2022)

11  ("The page placement of the warranty with disclaimer is of no moment considering the

12  manual's table of contents appears on the second page of the manual and specifically

13  notes on which page to find the warranty." (Salamon Decl., Ex. 2 at 4, 53)). *Hirsch*'s

14  "emphasis on the disclaimer's page location ignore[d] that a reasonable person would

15  notice the . . . table of contents" in the manual, *see Dang I*, 2018 WL 11348883, at *6,

16  which alerted users in all capitalized and bold text that there was a "**STATEMENT OF**

17  **LIMITED PRODUCT WARRANTY**" and the page number of where they could find

18  it. *See* Salamon Decl., Ex. A at 7. All a user had to do was open the manual to see on the

19  first page that there was a warranty and where to find its terms. *See id.*

20         Not only is *Hirsch* an outlier in its failure to consider how a document's table of

21  contents can alert a user to the information within, it also ignores the standard for

22  "conspicuousness" under California (and Illinois) law. "[C]onspicuous terms include . . .

23  (B) Language in the body of a record or display in larger type than the surrounding text,

24  *or in contrasting type*, font, or color to the surrounding text of the same size.'" *Dang I*, 2018

25  WL 11348883, at *6 (emphasis and alterations in original) (quoting Cal. Com. Code

26  § 1201(10)); *accord* 810 Ill. Comp. Stat. 5/1-201(10) (same). To be sure, "[a] printed

27

28  _____
    [14] Although *Oltman* applied federal common law, the relevant question under California and Illinois law—whether a reasonable consumer would have been on notice of the provision—is the same.

1    heading in capitals (as NONNEGOTIABLE BILL OF LADING) is conspicuous." *A*

2    *& M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 119 n.5 (Cal. Ct. App. 1982).

3    Accordingly, in *Dang I*, for example, the court found Samsung's warranty

4    disclaimer effective for two reasons. First, it found that the "Plaintiff's emphasis on the

5    disclaimer's page location ignore[d] that a reasonable person would notice the four-item

6    table of contents on the Information Booklet's cover that states the Manufacturer's

7    Warranty begins on page 15." 2018 WL 11348883, at *6. And second, the court found

8    that "[a] reasonable person would also notice the disclaimer within the Manufacturer's

9    Warranty because the disclaimer is written in capital letters, whereas the text before and

10   after it is in lower case font." *Id.*; Salomon Decl., Ex. 3 at 2, 8-10. On appeal, the plaintiff

11   raised these same conspicuousness arguments, and the Ninth Circuit, too, rejected them.

12   Without even referencing the table of contents, the Ninth Circuit found that "the

13   disclaimer met the requirements of being conspicuous" simply because "the written

14   disclaimer is in all caps under a section labeled 'Manufacturer's Warranty' and subsection

15   titled, 'What are the limits on SAMSUNG's liability', and the disclaimer is set off from

16   the surrounding text in a conspicuous and clear manner." *Dang II*, 803 F. App'x at 138.

17   The BSH and Samsung disclaimers contain all of these hallmarks of conspicuous

18   notice. Both of their manuals include tables of contents at the beginning of the manuals

19   with contrasting bold headings offset from the surrounding text "specifically not[ing] on

20   which page to find the warranty." *See Simner*, 2022 WL 3152707, at *9; *Hedrick*, ECF 70-

21   2 at 5, 70-3 at 3; *Norris*, ECF 67-1 at 7. The Thermador manual's table of contents even

22   includes a specific subsection for "Warranty exclusions," and the Samsung manual's

23   bolded "**Warranty (U.S.A.)**" heading is in "larger type than the surrounding text." *See*

24   *Hedrick*, ECF 70-2 at 5; Cal. Com. Code § 1201(10); *Norris*, ECF 67-1 at 7.

25   The disclaimers in each manual also easily satisfy California's and Illinois's

26   conspicuousness standards. BSH's disclaimer has an independent heading titled

27   "Warranty Exclusions" in large font (and in the case of the Thermador manual, also

28   bolded) offset from the surrounding text; and Samsung's disclaimer has an independent

heading titled "**EXCLUSION OF IMPLIED WARRANTIES**" in bold, all-capitalized text, such that each heading plainly would draw the reader's attention to the disclaimer. *See Hedrick*, ECF 70-2 at 35, 70-3 at 43; *Norris*, ECF 67-1 at 45-46. The disclaimer of implied warranties in each manual is then in contrasting all-capitalized font. *See id.* These disclaimers are conspicuous, and "a reasonable person would notice" them within BSH's and Samsung's manuals. *See Dang I*, 2018 WL 11348883, at *6.[15]

That is particularly true for a reasonable person in the shoes of the *Hedrick* and *Norris* Plaintiffs. Each of them alleges reviewing the full contents of the manuals that came with their appliances after receiving them, and concluding that the "manual did not disclose or warn that the product[s] emitted harmful pollutants." *See* H ¶¶ 52, 55, 58; N ¶¶ 51, 54. "A reasonable person in that position would have opened the" user manuals and, at the very least, reviewed the table of contents, which "would have [immediately] revealed" the warranty and where Plaintiffs could view the full terms. *Pang v. Samsung Elecs. Am., Inc.*, 371 F. Supp. 3d 633, 639-40 (N.D. Cal. 2019). This is especially true here given Plaintiffs' acknowledgement that the BSH and Samsung manuals effectively warned against other risks like fire and tipping, which are located either immediately before or after the tables of contents. *See Hedrick*, ECF 70-2 at 5-9; *Hedrick*, ECF 70-3 at 3-7; *Norris*, ECF 67-1 at 3-13. If such warnings were effective, so too were the tables of contents appearing either immediately before or after those disclosures that direct users to the full terms of the warranties and disclaimers. *See Pang*, 371 F. Supp. 3d at 640.

The Court's prior decision, if left undisturbed, would have significant policy

---

[15] *See also, e.g., Micro Modular Techs. PTE Ltd v. Atheros Commc'ns. Inc.*, 2010 WL 11558160, at *7 (C.D. Cal. Nov. 3, 2010) (enforcing disclaimer in all-capitalized, tiny font located under bold, all-capitalized, small-text subheading titled "**Warranty**" that appeared on fourth page of Price Quotation that had no table of contents (Salamon Decl., Ex. 4 at 5)); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 818-19 (N.D. Cal. 2014) (enforcing all-capitalized disclaimer in tiny font under bold, small text subheading, "**Disclaimer of Warranties**," on seventh page of Software Licensing Agreement that had no table of contents (Salamon Decl., Ex. 5 at 8)); *Frain Grp., Inc. v. Steve's Frozen Chillers*, 2015 WL 1186131, at *5 (N.D. Ill. Mar. 10, 2015) (enforcing all-capitalized disclaimer on eighth page of proposal without table of contents, surrounded by slightly smaller lowercase text, and following all-capitalized and bolded heading "**LIMITED WARRANTY**" (Salamon Decl., Ex. 6 at 9)); *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 2010 WL 3835874, at *6 (N.D. Ill. Sept. 24, 2010) (enforcing disclaimer that was printed in the same tiny font as the rest of the agreement but in all capital letters (Salamon Decl., Ex. 7 at 2)).

consequences. Materials packaged with expensive consumer products contain myriad categories of information. It is impossible for a company to highlight every salient piece of information on the cover or first page of a manual—or even every salient category—especially for a product like a large gas range, stove, or cooktop that is typically delivered to consumers unboxed and without any packaging. That is precisely why companies include tables of contents in the manuals to readily direct users to where different categories of information and terms can be found within the documents.

The *Hedrick* and *Norris* Plaintiffs bought their appliances between September 2017 and May 2021 but did not file suit until 2023 or 2024, well after their warranty periods expired. *See, e.g., Davidson v. Apple, Inc.*, 2017 WL 976048, at *12-13 (N.D. Cal. Mar. 14, 2017) (dismissing implied warranty claims where allegedly defective product included limited warranty disclaiming implied warranties for one-year period). Because BSH and Samsung validly and conspicuously disclaimed all implied warranties beyond the duration of the express warranty, and the *Hedrick* and *Norris* Plaintiffs filed suit after the express warranty periods expired, the Court should dismiss their implied warranty claims.

**VII.  Plaintiffs Fail to Adequately Plead Their Unjust Enrichment Claims**

Plaintiffs fail to adequately plead their unjust enrichment claims. A plaintiff pleading a standalone claim for unjust enrichment under California law must allege that the defendant "has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Lentz v. Sanderson Farms, Inc.*, 2020 WL 12656231, at *8 (N.D. Cal. Feb. 10, 2020) (quotation marks omitted) (dismissing unjust enrichment claim that did not plead these elements or plead predicate claims grounded in fraud with particularity). Similarly, under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp. Inc.*, 545 N.E.2d 672, 678 (Ill. 1989). Yet, Plaintiffs do not allege with particularity under Rule 9(b) or otherwise that a benefit was conferred through mistake, fraud, coercion, or request, or that Defendants' retention of any benefit violates fundamental principles of justice, equity, or good conscience. *See Goodwin v.*

*Countrywide Home Loans, Inc.*, 578 F. App'x 688, 689 (9th Cir. 2014) (dismissing unjust enrichment claim for failure to plead fraud under Rule 9(b)).

## VIII. Plaintiffs' Punitive Damages Plea Remains Inadequate

This Court previously dismissed Plaintiffs' prayer for punitive damages against BSH because "Plaintiffs have failed to plead facts sufficient to establish their entitlement to punitive damages." Op. 28. Plaintiffs' new Complaints add no facts to support their prayers for punitive damages against any Defendant, and they should all be dismissed.

To impose liability on a corporation, a plaintiff must allege that the wrongful act was committed by an officer, director, or managing agent, or the conduct was authorized or ratified by a company director or manager. *See* Cal. Civ. Code § 3294(b); *Ortega v. Nat. Balance Inc.*, 2013 WL 6596792, at *5 (C.D. Cal. Dec. 16, 2013) (dismissing punitive damages prayer where plaintiff did not allege authorization or ratification by any manager or director); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *10 (C.D. Cal. Sept. 23, 2013) (similar). Plaintiffs make only one change to their Complaints that appears to relate in any way to their prayers for punitive damages. They add that Defendant's failure to include a warning label "despite Defendant[s'] knowledge of these emissions and safety hazards, improperly focuses on profit over the safety of consumers and demonstrates a willful and conscious disregard of the rights and safety of consumers like Plaintiffs." H ¶ 47; G ¶ 46; N ¶ 47. But that allegation does not assert any facts plausibly showing conduct or ratification by a corporate officer, director, or agent of any Defendant as required. It is also conclusory and insufficient to support a prayer for punitive damages. *See, e.g.*, *Hurd v. Boston Sci. Corp.*, 2023 WL 3564741, at *4 (C.D. Cal. Apr. 10, 2023) (Holcomb, J.) (striking prayer for punitive damages for failure to allege facts to support claim); *Dallah & Dallah v. State Farm Gen. Ins. Co.*, 2022 WL 2784391, at *4 (C.D. Cal. Apr. 20, 2022) (Holcomb, J.) (similar).[16]

## CONCLUSION

For the reasons stated, the Court should dismiss the Complaints with prejudice.

---

[16] Illinois Plaintiff Kalergis no longer seeks punitive damages on his claims, and his prayer for punitive damages should also be dismissed. H ¶¶ 109, 149.

1

2    Dated:  August 23, 2024                    Respectfully submitted,

3                                               CROWELL & MORING LLP

4

5                                               By:   /s/   *Rebecca B. Chaney*
                                                      Rebecca B. Chaney

6

7                                               *Attorneys for Defendant BSH Home Appliances*
                                                *Corporation*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28